**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald MITCHELL,
Defendant-Appellant.**

**No. 85–2005.**

United States Court of Appeals,
Seventh Circuit.

Submitted March 25, 1986.*

Decided April 16, 1986.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Paul Richard Sturgeon, Clark & Sturgeon, Belleville, Ill., for defendant-appellant.

Bruce E. Reppert, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, POSNER and EASTERBROOK, Circuit Judges.

CUMMINGS, Chief Judge.

Ronald Mitchell appeals his conviction for "Bank Robbery and Incidental Crimes" under 18 U.S.C. § 2113(a) and (d), arguing that the trial court erred in permitting him to proceed *pro se* with standby counsel. Mitchell also challenges the trial court's refusal to sever his trial from that of his co-defendant, its denial of his motion for judgment of acquittal, and his sentence of twenty years' imprisonment. We affirm.

### I.

This Court previously characterized the facts of Mitchell's case in *United States v. Oglesby,* 764 F.2d 1273, 1274–75 (7th Cir. 1985), where we upheld the conviction of Mitchell's co-defendant, Joseph Oglesby. The pertinent information is as follows:

> The testimony at the trial of Oglesby and his co-defendant, Mitchell, in the United States District Court for the Southern District of Illinois established a bank robbery in Belleville, Illinois, and

the subsequent arrest in East St. Louis, Illinois. At about noon on February 23, 1984, two men, later identified as Oglesby and Mitchell, entered the Illini Federal Savings and Loan Association of Belleville, Illinois. While Mitchell approached the bank manager indicating that he wished to apply for a loan, Oglesby slipped behind the teller's counter and pressed a loaded .38-caliber Derringer in the side of the nearest teller. Mitchell produced a .357 Magnum revolver and threatened the manager. At Oglesby's direction, the teller removed $4,302.00 from the cash drawers and placed the money in a brown bag. Included in the money removed from the cash drawers was bait money, bills whose serial numbers were recorded for identification purposes. The removal of the bait money from the cash drawer activated the saving and loan's surveillance cameras which took a series of pictures, including photographs of Oglesby and Mitchell, during the bank robbery.

After ordering their victims to lie facedown in a rear room of the bank, the two men fled in a yellow Camaro with Tennessee license plates. The two men drove to an apartment complex where they abandoned the Camaro and paid a Bernard Bolden $40.00 to drive them to a location in East St. Louis, Illinois. After leaving the men in East St. Louis, Bolden returned to the apartment complex where he was detained and questioned by the police. Bolden later accompanied the police to the East St. Louis address to which he had transported the men. The police located and apprehended the two subjects, searched the house where they were temporarily residing, and recovered a .38-caliber Derringer, a .357 Magnum Smith & Wesson revolver, and a large sum of money. The police removed one of the bait bills from Mitchell's pockets and about $1,500.00 in cash.

On the first day of trial just before the jury was sworn, Mitchell requested the court to appoint him a new attorney. Because this request came so late, the court denied it and instead decided to allow him to proceed *pro se* with James Hackett, his appointed attorney, as standby counsel. Mitchell later submitted motions for severance and for a judgment of acquittal, both of which were denied. On April 25, 1984, the jury found Mitchell guilty of violating 18 U.S.C. § 2113(a) and (d),[1] and the court sentenced him to twenty years' imprisonment. This appeal followed.

## II.

We consider Mitchell's four contentions in the order presented in his brief.

### A. *Pro se* Representation.

Mitchell, after stating initially that he had irreconcilable differencies with Hackett, requested the district court to appoint him a new attorney. The court, refusing to delay the trial, urged Mitchell to accept the benefit of legal guidance, and it attempted

---

1. These Sections provide:
    (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
    Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such savings and loan association and in violation of any bank or such statute of the United States, or any larceny—
    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

            *    *    *    *    *    *

    (d) Whoever, in committing, or attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.
18 U.S.C. § 2113(a) & (d) (1985).

to discuss with the defendant the potential problems of self-representation.[2] Mitchell chose to proceed *pro se* with Hackett as standby counsel rather than go to trial with Hackett as his regular attorney.

For Mitchell to knowingly and intelligently waive his Sixth Amendment right "to have the assistance of counsel for his defense," he had to "be made aware of the dangers and disadvantages of self-representation so that he kn[ew] what he [was] doing and his choice [was] made with his eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). *See also McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Edwards v. Arizona*, 451 U.S. 477, 482–83, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). While the trial judge need not give "a hypothetical lecture on criminal law," *Arnold v. United States*, 414 F.2d 1056, 1058 (9th Cir.1969), *cert. denied*, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970), he should have more fully discussed the situation with Mitchell. Instead of stressing problems such as exclusion of evidence, self-incrimination, and waiver of potential defenses, the trial court merely mentioned that "there will be many occasions where possibly objections should be made that you will not recognize that should be made." We do not, however, hold that this failure to inform Mitchell more completely about the dangers of waiving counsel rises to the level of reversible error, but this Court does caution district judges of the problems inherent in allowing criminal defendants to represent

\* \* \* \* \* \*

THE COURT: All right Mr. Mitchell, be seated. Mr. Mitchell before we recess for lunch we were discussing whether or not you wanted to represent yourself. Have you discussed that with your attorney?

MR. MITCHELL: Yes, sir.

THE COURT: And Mr. Hackett, have you talked to Mr. Mitchell about the problem of representing himself?

MR. HACKETT: Yes, Your Honor, I have had the opportunity to speak to him and told him of what I saw were the dangers and the risks. Mr. Mitchell would still like to represent himself with my assistance here at the table.

THE COURT: Mr. Mitchell, I strongly advise you against that choice. However, it is your choice to make. I want to advise you that there will be many occasions where possibly objections should be made that you will not recognize that should be made, you may not be able to make them in the right way, and although Mr. Hackett will be there to assist you, it will still be your burden to represent yourself. Mr. Reppert, do you have anything to say about this?

MR. REPPERT: I don't know that the Government is really in a position to challenge whatever decision the defendant wishes to make with respect to his representation.

THE COURT: You're still sure you want to represent yourself, Mr. Mitchell?

MR. MITCHELL: Yes, sir.

THE COURT: We will proceed with you representing yourself and Mr. Hackett will be standby counsel.

---

**2.** The following two colloquies took place between the court, Mitchell, Hackett, and Bruce E. Reppert, the Assistant United States Attorney, the first before, and the second after lunch:

MR. MITCHELL: Your Honor, I feel that, you know, I could represent myself better than Mr. Hackett is going to represent me. First of all we have had heated arguments about this, and we have differences in this thing all the way and I haven't really had time to go over this to study this case and I am just not prepared for a trial with this attorney.

THE COURT: Well Mr. Mitchell, the case is set for trial and it is going to trial today. I mean, you have known about that for some time I am sure. Do you have anything to say, Mr. Reppert?

MR. REPPERT: No, Your Honor. If he wants to represent himself in this action, the Government has nothing to say. I think, so far as that's concerned, we would like to try the case today.

THE COURT: We are going to try it today. See, as far as getting you another lawyer, I don't think you could get one at this point that could be ready to go to trial. You say that you could do as good a job yourself, and if you want to represent yourself, we can talk about that. Is that what you're saying? I am not sure.

MR. MITCHELL: Yes, well, what I am saying, Your Honor, is I don't know all the legal terms and everything to be used, but my knowledge of what went on and things that I need to say, you know, to establish my innocence, I don't know the legal terms for them, but I know a lot of things needs to be brought out that I don't think my attorney is going to bring out.

themselves without more complete warning.[3]

Mitchell waited until the last minute before first requesting new counsel and then self-representation. Thus he could be asked, in the interest of orderly procedure, to choose between waiver of counsel and another course of action as long as the choice presented to him was not constitutionally offensive. *United States v. Davis,* 604 F.2d at 483 (quoting *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976)). In the present case, the court offered Mitchell with a clear choice between representation by Hackett or self-representation with Hackett available for consultation at the defendant's discretion. The court indicated it was too near the start of the trial to appoint new counsel for Mitchell. In response, Mitchell persisted in his desire to proceed *pro se.*

■ The issue presented here is whether proceeding *pro se* with Hackett as standby counsel was a constitutionally adequate alternative to potentially ineffective assistance by Hackett's complete representation by Mitchell. Mitchell has asserted no allegation that Hackett was incompetent. Instead, he contends that his "counsel was ineffective insofar as establishing any relationship between" Hackett and himself. Since he and Hackett "could never calmly and productively work together," Mitchell argues that by the court's presenting him with the choice of representation by Hackett or self-representation with Hackett as standby counsel, he could not voluntarily waive his Sixth Amendment right through a free and meaningful choice. *See Moore*

*v. Michigan,* 355 U.S. 155, 164, 78 S.Ct. 191, 196, 2 L.Ed.2d 187 (1957); *Love v. Young,* 781 F.2d 1307, 1316 (7th Cir.1986). The Supreme Court, however, has held that there is no constitutional right to a "meaningful [*i.e.,* harmonious] attorney-client relationship," *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983),[4] and therefore, the trial court did not offer Mitchell an impermissible choice by requiring him to proceed either *pro se* plus standby counsel or with an attorney he didn't like. While as an indigent Mitchell had a constitutional right to have conflict-free, competent legal representation paid by the state, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 92 L.Ed.2d 799 (1963), he did not have the right to the appointed attorney of his own choice. *United States v. Ely,* 719 F.2d 902, 904 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984). We therefore hold that Mitchell's decision to proceed with Hackett as standby counsel constituted a knowing and intelligent waiver of his right to counsel.

## B. Severance.

■ Mitchell next asserts that the trial court erred by denying his motion for severance. The court had the discretion to sever the trial if either Mitchell or Oglesby would be prejudiced by joinder. Fed.R. Crim.P. 14. The law in this Circuit is well settled that "[m]otions for severance are committed to the sound discretion of the trial court and will be overturned on appeal only upon a showing of abuse of discre-

---

**3.** The district court could have conducted a much more thorough and extensive inquiry of Mitchell by asking Mitchell his age and degree of education; informing him of the crimes with which he was charged and the maximum possible sentences; determining that Mitchell understood the nature of the charges; ascertaining that he had copies of the Federal Rules of Evidence and the Federal Rules of Criminal Procedure and instructing him to read them and to abide by them, whether read or not; and telling Mitchell that he would be expected to conduct himself in accordance with those rules. Yet the court's finding of a knowing, intelligent, and voluntary waiver was permissible under recent decisions of this Court. *See United States v.*

*Martin-Trigona,* 684 F.2d 485, 491–92 (7th Cir. 1982); *Wilks v. Israel,* 627 F.2d 32, 34–36 (7th Cir.1980); *United States v. Davis,* 604 F.2d 474, 481–83 (7th Cir.1979); *cf. United States v. Noble,* 754 F.2d 1324 (7th Cir.1985); *United States ex rel. George v. Lane,* 718 F.2d 226 (7th Cir.1983).

**4.** *Morris,* of course, does not hold that a purely *pro forma* meaningless relationship satisfies the Sixth Amendment requirement of effective assistance of counsel. The Court was rejecting the Sixth Circuit's holding that the Sixth Amendment requires a close rapport between an accused and his attorney. 461 U.S. at 13–14, 103 S.Ct. at 1617–18.

tion." *Oglesby,* 764 F.2d at 1275 (citing *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954)). *See also United States v. Tuchow,* 768 F.2d 855, 865 n. 10 (7th Cir.1985). Because Mitchell fails to establish specifically how he would be prejudiced by joinder with Oglesby, we hold that the district court did not abuse its discretion in denying his motion to sever.

**C. The Motion for Judgment of Acquittal and the Sentence.**

█ Mitchell argues that his motion for judgment of acquittal should have been granted because the government relied on an in-court identification procedure instead of out-of-court line-up or photographic identification procedure. According to Mitchell, an in-court identification is inherently untrustworthy and should not be the basis of a conviction. Additionally, he argues that a key government witness lied and another witness presented contradictory testimony. These arguments were previously used by co-defendant Oglesby in his companion case. We rejected similar claims there, *Oglesby,* 764 F.2d at 1278–79, and do the same here. In taking the view most favorable to the government, there was substantial evidence to sustain the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Dennis,* 737 F.2d 617, 619 (7th Cir.1984).

█ Finally, the defendant argues that his sentence of twenty years constitutes cruel and unusual punishment. Mitchell notes that he has a record of only non-violent crimes, and that no one was injured in the crime under consideration. He contends these factors render the twenty-year sentence cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution. The sentence given to Mitchell was within the statutory limit; the maximum sentence for a viola-

tion of 18 U.S.C. § 2113(a) and (d) together is a fine of $10,000 and 25 years' imprisonment. No fine was imposed. Moreover, the sentence was under 18 U.S.C. § 4205(a) permitting release on parole after serving one third of the sentence. "It is widely established that a district court has wide discretion in determining what sentence to impose," *United States v. McCoy,* 770 F.2d 647 (7th Cir.1985) (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)), and as Mitchell's sentence was within the maximum provided by Congress, it is only subject to review on appeal for a manifest abuse of discretion. *United States v. Carter,* 720 F.2d 941, 951 (7th Cir.1983).

Considering the violent nature of Mitchell's crime—he pointed a loaded .357 Magnum revolver at the bank's employees—along with his prior criminal record,[5] this Court cannot say that the district judge abused his discretion in sentencing him to less than the statutory maximum or that the sentence was disproportionate to the severity of his offense. *Compare Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Mitchell has simply failed to demonstrate that his sentence constitutes cruel and unusual punishment within the purview of the Eighth Amendment.

The judgment of the district court is AFFIRMED.

---

5. While this appears to have been Mitchell's first "violent" crime, his record reveals a five-year history full of convictions for forgery, unlawful possession of checks stolen from the mail, embezzlement, theft of public funds, and obtaining money by bogus checks. He has spent much time confined and subsequently paroled.