J. Ricardo BURGOS and Alton H. Maddox, Jr., Plaintiffs,

v.

Francis T. MURPHY as Presiding Justice of the Appellate Division, First Department; Theodore R. Kupferman, Leonard H. Sandler, Joseph P. Sullivan, David Ross, John Carro, Sidney H. Asch, E. Leo Milonas, Betty Weinberg Ellerin, Richard W. Wallach, George Bundy Smith as Associate Justices of the Appellate Division, First Department; Burton R. Roberts as Judge of the Criminal Term of the Supreme Court of the State of New York, County of Bronx; Bernard J. Fried as Acting Justice of the Supreme Court of the State of New York, County of Bronx; Geoffrey Q. Ralls as Administrator of the Assigned Counsel Plan for the Appellate Division, First Department, Defendants.

No. 87 Civ. 8151 (MBM).

United States District Court, S.D. New York.

July 28, 1988.

Alton H. Maddox, Jr., Brooklyn, N.Y., for plaintiffs.

Caren S. Brutten, Asst. Atty. Gen., of the State of N.Y., New York City, for defendants.

OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs in this action have asserted a purposeful and racially motivated denial of their civil rights. Defendants have moved to dismiss and for summary judgment, and for sanctions on the ground that plaintiffs' serious charges have no factual or legal basis. For the reasons set forth below, the motion is granted.

I.

Plaintiff J. Ricardo Burgos is an imprisoned indigent charged in Supreme Court, Bronx County with several counts of murder and related offenses. Plaintiff Alton H. Maddox, Jr. is the lawyer whom Burgos wishes to defend him against those charges at public expense, and who wishes to do so. Maddox is not a member of the panel of counsel, established pursuant to Article 18–B of the County Law, N.Y. County Law § 722 (McKinney 1988), eligible for assignment to defend indigents at public expense (the "18–B panel"). After Maddox made known his desire to represent Burgos, he was provided with an application and told that if he was admitted to the 18–B panel after a review of his application and references, and an interview, his selection to represent Burgos would rest with the discretion of the trial judge.

The plaintiffs claim that to require Maddox to apply for membership on the 18–B panel before he can be considered to represent Burgos at public expense denies to Burgos his rights to counsel and to equal protection of the laws guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution, and discriminates against Maddox based on his race in violation of the Fourteenth Amendment and federal law. Maddox alleges also that the application and interview requirement is the work of a conspiracy among the defendants to deprive him of his constitutional rights to equal protection and privileges and immunities, and/or the result of the failure by some defendants not to prevent such deprivation by others. Maddox appears here both as counsel to Burgos and in his own behalf.

The first 11 defendants are the Justices of the Appellate Division, First Department, who allegedly formulated the rules for the 18–B panel, but whose only participation in the underlying events appears to have been their appointment of defendant Geoffrey Q. Ralls, who administers the panel. Defendant Burton B. Roberts is the Administrative Judge of the Criminal Branch, Supreme Court, Bronx County, whose role was to direct that the trial judge in the Burgos prosecution, defendant Bernard J. Fried, refer to Ralls the sworn request from Maddox to be assigned to represent Burgos.

II.

The complaint sets forth three claims for relief—one in behalf of Burgos and two in behalf of Maddox. To the extent the alle-

gations in the complaint are relevant to those claims,[1] they are as follows: Burgos and Larry Davis were indicted in connection with four murders committed in the Bronx in October, 1986.[2] Both men are black. Davis allegedly chose attorneys William M. Kunstler and Lynne F. Stewart, both white, to represent him at public expense, and they were duly appointed to do so. The complaint alleges "[u]pon information and belief" that neither was a member of the 18-B panel when appointed to represent Davis.

By contrast, according to the complaint, when Burgos sought to select Maddox, who is black, to represent him at public expense, Maddox was told he could not be selected until he became a member of the 18-B panel.

Plaintiffs bottom three claims on those allegations. First is the claim that Burgos has been denied the right to counsel of his choice under the Sixth and Fourteenth Amendments to the U.S. Constitution, and his right to equal protection of the laws also guaranteed by the Fourteenth Amendment. Inasmuch as all defendants are said to have acted under color of state law, Burgos has claimed a violation of 42 U.S.C. § 1983, which gives legal redress to anyone denied constitutionally protected rights under color of law.

Next is the claim that the failure to appoint Maddox denies him the right to conduct his law practice, with its attendant contractual and property rights, and imposes on him terms and conditions, such that he is denied rights available to white citizens similarly situated. Thus Maddox has claimed here a denial of equal rights in violation of 42 U.S.C. § 1981,[3] as well as a violation of 42 U.S.C. § 1983.

Finally, Maddox alleges that all the defendants were either engaged in a conspiracy to deny him the above rights on grounds of his race, in violation of 42 U.S.C. § 1985,[4] or were aware of such a conspiracy and, having the power to prevent that denial or help to prevent it, neglected and refused to do so, in violation of 42 U.S.C. § 1986.[5]

To remedy these alleged denials and violations, plaintiffs seek a declaration that requiring Maddox to apply for membership on the 18-B panel before he can represent Burgos, and refusing to compensate him otherwise as Burgos' counsel, is unconstitutional, as well as an injunction that would have the effect of appointing Maddox to represent Burgos at public expense. They also invoke 42 U.S.C. § 1988, which permits

1. The complaint includes other allegations, *e.g.:* "This action has arisen because defendants are seeking to convict plaintiff Burgos absent any semblance of a fair trial and in violation of the equal protection of the laws." Complaint ¶ 2. "The judiciary still fashion policies and make decisions which are adverse to attorneys of African descent. These policies and decisions are reflected in the under-representation of attorneys of African descent in every facet of the judiciary. Although the judiciary authored *Brown v. Board of Education,* 347 U.S. 483, [74 S.Ct. 686, 98 L.Ed. 873] (1954), it still thrives under and practices the dictates of *Dred Scott v. Sandford,* 60 U.S. [(19 How.)] 393 [15 L.Ed. 691] (1857)" Complaint ¶ 5. Because the only part of a pleading that need be treated in a lawsuit is the part, if any, that is material and pertinent, Rule 12(f), Fed.R.Civ.P., *i.e.,* the part as to which evidence would be admissible, *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976); 2A J. Moore, J. Lucas & G. Grother, Jr., Moore's Federal Practice, ¶ 12.21[1] (2d ed. 1987), those allegations and others of similar import are beyond the scope of this opinion.

2. Davis was acquitted of those murders and is now on trial on charges stemming from a shootout with police that preceded his arrest. *See, Davis v. Lansing,* 851 F.2d 72 (2d Cir.1988).

3. § 1981 provides "all persons ... [with] the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons...."

4. Although the complaint does not specify the paragraph of § 1985 upon which the Maddox relies, I assume reliance on § 1985(3), which provides a remedy for any person who has been injured as a result of a conspiracy intended to deprive members of a protected class of equal protection under the law.

5. § 1986 provides a cause of action against individuals who neglect to prevent a conspiracy actionable under § 1985.

an award of attorneys' fees to "the prevailing party" in any action brought under the other statutory sections they have relied on.

All defendants moved initially to dismiss under Rule 12(b)(6), Fed.R.Civ.P., asserting that the complaint failed to state a claim upon which relief may be granted, and for sanctions pursuant to Rule 11. Their papers, however, included affidavits and supporting exhibits tending to show not so much that the complaint was legally insufficient as that its factual statements were materially false. Accordingly, pursuant to Rule 12(b), Fed.R.Civ.P., I ordered that the motion be treated as one for summary judgment under Rule 56 and gave all parties the opportunity for additional submissions.

III.

The facts set forth below are not in dispute. On December 4, 1986 a grand jury sitting in Supreme Court, Bronx County returned an indictment charging Burgos with multiple counts of murder, attempted robbery and criminal use and possession of firearms. Soon afterward, counsel was appointed to represent Burgos, but Burgos became dissatisfied and discharged his assigned lawyer. On September 17, 1987 Maddox filed an affirmation stating that Burgos was then without counsel, asserting that Burgos was "an unpopular defendant within the ruling political and police circles of this local government," predicting "a zealous effort ... on the part of the prosecution to muzzle Mr. Burgos and his counsel," insisting that Burgos had the right to appointed counsel of his choice, and presenting himself for appointment as 18–B counsel with Burgos' concurrence.

The trial judge, the Hon. Bernard J. Fried, initially sent the affirmation to Justice Burton B. Roberts, but then at Justice Roberts' direction referred it on September 22, 1987 to defendant Ralls, as administrator of the 18–B panel in the First Department. Two days later Ralls sent Maddox an application for admission to the 18–B panel, pointing out in the covering letter that although Maddox could not be appointed without being a member of the panel, he need not be a member of the panel in order to avail himself and his indigent client of the services of publicly paid experts and investigators. Ralls added that whatever Maddox's view of the law, Burgos had no right to choose his appointed counsel.

Maddox never filed the application. Instead, on November 16, 1987 he filed this action.

IV.

Burgos' claim is that, indigent or not, he has an absolute right under the Constitution's Sixth Amendment to have Maddox represent him, whether or not Maddox is a member of the 18–B panel. The short and simple answer to Burgos' claim is that that right does not exist, as is plain from a review of the relevant cases, virtually none of which are cited in any of the briefs submitted by either side on this motion.

Although a defendant charged with a serious crime has the right to be represented by counsel, by appointment if necessary, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the purpose of the right to counsel "is simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), not necessarily to ensure that they are represented by counsel of choice. Thus a trial court's refusal to grant a continuance with the result that a defendant could not be represented by his chosen trial counsel did not violate the Sixth Amendment. *Morris v. Slappy,* 461 U.S. 1, 12–15, 103 S.Ct. 1610, 1616–1618, 75 L.Ed.2d 610 (1983). In reaching that result, the Supreme Court rejected the Ninth Circuit's holding that the Sixth Amendment included the right to a "meaningful attorney-client relationship": "No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel." *Id.* at 13–14, 103 S.Ct. at 1617.

Rather, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' *United States v. Cronic,* 466 U.S. 648, 657, n. 21 [104 S.Ct. 2039, 2046, n. 21, 80 L.Ed.2d 657] (1984). Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* — U.S. —, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (holding that there was no error in declining petitioner's waiver of his right to conflict-free counsel and refusing to permit his proposed substitution of attorneys).

In view of that history, it is not surprising that those courts of appeals that have addressed the issue have found that although the Sixth Amendment guarantees to an indigent the right to counsel, it does not guarantee counsel of his choice. *See, e.g., United States v. Allen,* 789 F.2d 90, 92 (1st Cir.1986); *United States v. Mitchell,* 788 F.2d 1232, 1236 (7th Cir.1986); *United States v. Young,* 482 F.2d 993, 995 (5th Cir.1973), and cases cited therein. *See also, United States v. Monsanto,* 852 F.2d 1400 (2d Cir.1988) (*en banc*) (holding unconstitutional the restraint and "relation back" provisions of the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853(e)(1)(A) and (c)) at 1415–16 (Mahoney, C.J. dissenting) and 1420 (Pratt, C.J. concurring and dissenting), and cases cited therein. As Judge Pratt pointed out in that case, the right to counsel has its limits, including that, "only those defendants who are 'financially able' could enjoy this qualified right to counsel of choice." *Id.* (quoting *Morris v. Slappy, supra,* 461 U.S. at 23, 103 S.Ct. at 1622). The reason for such a rule is not hard to figure out. If indigents could select counsel, the burden of representation could never be distributed evenly. If lawyers, whether on or off the panel, could select their clients, it would be impossible to assure representation for all who need it. Finally, if what plaintiffs are seeking is one rule for them and another for everyone else, such a result is both unfair and, if extended, unworkable.

Because Burgos' claim is based on a view of the Sixth Amendment that not only has no support in current case law but is in fact contradicted by every relevant authority, that claim must be dismissed.

The infirmities in Maddox's claims are factual rather than legal, which is a good deal more reprehensible in my view, and of course equally fatal. The linchpin of Maddox's claims is that Kunstler and Stewart, both white, were not members of the 18–B panel when they were appointed to represent Davis at public expense. If it turned out that Kunstler and Stewart were members of the panel before they were appointed to represent Davis, then even accepting for a moment the plausibility of a racially motivated conspiracy that operates to help one black defendant (Davis) but not another (Burgos), there could be no claim that Maddox was the victim of discrimination when he was asked to apply for membership on the panel before he could be considered for appointment to represent Burgos. Yet the unrebutted evidence shows that both Kunstler and Stewart were members of the 18–B panel before they were appointed to represent Davis. Copies of their signed applications were submitted as exhibits on this motion. Kunstler was initially a member of the panel in 1974 and his membership then lapsed. Accordingly, the interview was waived for him when he reapplied before being appointed to represent Davis. With respect to Stewart, because there are various categories of the 18–B panel corresponding to the level of seriousness of the case the lawyers in each category are qualified to defend (Criminal Court, Supreme Court, Homicide and Appellate), and Stewart was a member of the Supreme Court panel but not of the Homicide panel, she was required both to apply and to be interviewed for the Homicide panel. Both Kunstler and Stewart were required to acknowledge in writing their willingness to accept 18–B

cases after they complete their representation of Davis.

Maddox claimed at oral argument that the "information and belief" to support the allegation in his complaint of privileged treatment for Kunstler and Stewart was derived from conversations with Kunstler. Yet Kunstler submitted an affirmation supposedly "in support of the relief sought in the within complaint," in which he discloses that, contrary to the averments of the complaint, he did apply for membership on the 18–B panel before he was appointed to represent Davis, and simply disclaims "independent recollection" but does not deny that he had been a member of that panel earlier. Moreover, it is unrebutted that on January 13, 1988, Maddox was given copies of the applications that had been submitted by Kunstler and Stewart before they were appointed to represent Davis. That is to say, more than a month before defendants moved to dismiss, Maddox had in hand evidence that proved the linchpin allegation in his complaint was false. Even if for some reason Kunstler had told Maddox before the complaint was filed in November, 1987 something different from what Kunstler later said in his April, 1988 affirmation, Maddox was aware by January 13, 1988 that the central charge in the complaint was wrong.

Maddox's papers submitted on this motion do not deal directly with any of these issues. Instead, they either change the nature of the allegations in the complaint without benefit of amending that pleading, or blindly reiterate as fact what is already established as falsehood, first to suggest that the alleged discrimination arose from a failure to assure Maddox in advance of his application, as Kunstler allegedly had been assured, that upon acceptance into the panel he would be appointed to represent a particular client; then that it was the interview requirement rather than the application that constituted the discrimination; then that unlike Maddox, Kunstler was not made to undertake any ongoing obligation to accept 18–B assignments. Yet these additional allegations, made under oath in an affidavit dated April 18, 1988 and an affirmation dated April 28, 1988, are themselves utterly baseless. Thus, for example, by letter dated September 22, 1987, defendant Justice Fried, the judge presiding in the Burgos prosecution, forwarded to Ralls Maddox's request to represent Burgos, ending his letter as follows: "In light of the serious nature of this indictment, which contains a charge of murder in the second degree, I urge that this request be expeditiously handled." Maddox was sent a copy of that letter, from which he could only have concluded that Justice Fried, the judge who would have discretion to appoint Maddox once Maddox became a member of the panel and who is charged here with conspiring to deprive Maddox of his civil rights, in fact fully expected to appoint Maddox and was urging that the application be processed swiftly. There is no doubt Maddox received the letter; it is attached as an exhibit to the complaint he signed. Thus the improvised charge, which appears nowhere in the complaint, that Maddox was treated differently from Kunstler in that he had no reason to believe before he applied that he would be appointed to represent the client he desired, is also demonstrably false.

Further, by letter dated February 20, 1987, Kunstler notified Ralls, the administrator of the 18–B panel, that he wished "to amend my initial application for 18–B panel appointment so as to indicate that I am willing to become a full-time member of said panel for all future cases rather than applying for the lomited [*sic* ] purpose of Larry Davis' case." Thus, the claim, which does appear in the complaint, that Maddox, unlike Kunstler, was to be burdened in discriminatory fashion with ongoing obligations, is also false, and was reiterated twice under oath after Maddox had received a copy of Kunstler's February 20, 1987 letter, attached as an exhibit to the defendants' motion papers.

Still further, whether or not Kunstler was interviewed in connection with his 1987 application, a letter from him to Ralls dated February 3, 1987 shows that such an interview was initially scheduled. Ralls has stated in his affidavit, and it is unrebutted, that the reason the interview was waived for Kunstler was that he had been a mem-

ber of the panel earlier and accordingly there seemed to be no reason to reinterview him. As to Stewart, Ralls has averred, again without rebuttal, that she applied and was interviewed in the normal course for membership on the Homicide panel before she could be assigned to represent Davis. Here again, Maddox's claim that he was singled out on the basis of race to be interviewed before he could be admitted to the panel, another claim that appears nowhere in the complaint, is without foundation.

Although summary judgment is an extreme remedy, *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975), the party opposing a summary judgment motion must "set forth 'supporting arguments or facts in opposition to the motion' and 'bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.' " *IBM Poughkeepsie Employees Federal Credit Union v. Cumis Ins. Society, Inc.,* 590 F.Supp. 769, 772 (S.D.N.Y.1984) (Weinfeld, J.) (citations omitted). In the absence of any such indication, summary judgment becomes "a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

Because there is no evidence whatever to support the operative allegations underlying any of Maddox's claims of discrimination, summary judgment must be granted dismissing them.

V.

The defendants have moved not only to dismiss the complaint but also for the award of counsel fees under Rule 11, Fed. R.Civ.P. In addition, it may be recalled that the complaint itself suggested the award of counsel fees pursuant to 42 U.S.C. § 1988, which authorizes the award of attorney's fees to "the prevailing party" in a civil rights case.

In *Oliveri v. Thompson,* 803 F.2d 1265, 1271–75 (2d Cir.1986), the Court reviewed the four sources of authority empowering federal courts to impose sanctions on lawyers and litigants, and the standards applicable to each. Without retracing the entire discussion there, it is sufficient to point out that two of these sources of authority for sanctions—the court's inherent power "to award an attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons * * *'," *id.* at 1272 (citation omitted); and 28 U.S.C. § 1927, which imposes liability for "excess costs, expenses, and attorneys' fees" occasioned by conduct which "multiplies the proceedings in any case unreasonably and vexatiously" —both require a showing of subjective bad faith.

By contrast, Rule 11, Fed.R.Civ.P.[6] and 42 U.S.C. § 1988 require only that objective lack of merit be shown; subjective good or bad faith is irrelevant. *Id.* at 1272–73, and 1275 (citing *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985)).

There are other potentially relevant distinctions among these sources of authority for imposing sanctions. Notably, 42 U.S.C. § 1988 authorizes sanctions only against parties, while 28 U.S.C. § 1927 permits sanctions to be imposed only on lawyers. *Id.* at 1272–73. That distinction is less meaningful here than it might be in some other cases inasmuch as Maddox appears as both party and lawyer, and there is no evidence that Burgos, imprisoned and awaiting trial on murder charges, had anything whatever to do with the filing or prosecution of this case beyond an expressed desire to be represented by Mad-

6. That Rule requires, among other things, that all pleadings bear the signature of an attorney certifying that "the signer has read the pleading ..., [and] that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ...," and enforces that requirement by authorizing the Court on motion or on its own initiative, in the event of a violation, to award "an appropriate sanction, which may include an order to pay to the other party ... reasonable expenses incurred ..., including a reasonable attorney's fee."

dox. Moreover, because Maddox is a lawyer, "he cannot claim the special consideration which the courts customarily grant to pro se parties." *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir.1981) (mandating an award of attorney's fees under 42 U.S.C. § 1988 to defendants sued by a lawyer who claimed that placement of a traffic summons on his dashboard after he refused to accept it in his hand was a violation of his civil rights). Accordingly, it appears unnecessary to draw fine distinctions between Maddox's role as lawyer and his role as litigant.

Another distinction that should be mentioned, if only to dismiss it, is the one between civil rights cases and all other litigation suggested by some of the more extravagant rhetoric in the complaint and in other submissions, both what is quoted above, see note 1, *supra* p. 1573, and what is not quoted. It was treated as follows in *Oliveri v. Thompson, supra,* where the Court of Appeals considered the argument "that special treatment of sanctions should be given to attorneys who handle unpopular civil rights claims, particularly those representing indigents and minority clients. We reject this claim out of hand." 803 F.2d at 1280.

I recognize that in order to justify sanctions pursuant to either the court's inherent authority or § 1927, detailed factual findings are necessary. *See Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir.1982), describing the "high degree of specificity in the factual findings of lower courts when attorneys' fees are awarded on the basis of bad faith." Yet even the short recorded history of this case fairly bulges with facts that justify a finding of subjective bad faith. Among them are the following: (i) Even if, as I doubt, Maddox was misinformed by Kunstler before he filed the complaint as to the events that preceded the appointment of Kunstler and Stewart to represent Davis, he knew after January 13, 1988, when he received documentary proof that Kunstler and Stewart had applied for membership on the panel before they were appointed to represent Davis, that there was no basis for the central allegation underlying his claims. Yet he continued to submit briefs seeking to justify continuation of the action as filed, including the argument that the defendants' initial motion to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., must be denied because the allegations in the complaint must be presumed true when such a motion is decided. (ii) Although he received a copy of Justice Fried's September 22, 1987 letter to Ralls in which the trial judge asked the 18–B administrator to expedite Maddox's application and evinced a clear intention to appoint Maddox as Burgos' lawyer, Maddox nonetheless included Justice Fried as a defendant in this case. Indeed, he reiterated under oath in his April 18, 1988 affidavit that, "Justice Bernard J. Fried has neither stated nor suggested that he would assign your deponent out of the normal rotation." (iii) Although Maddox received in the defendants' February 1988 motion papers a copy of Kunstler's letter specifically acknowledging his obligation to accept further 18–B assignments, Maddox reiterated twice under oath that that obligation had not been imposed on Kunstler. It is impossible on that record to believe that any lawyer could perceive here the existence of a valid civil rights claim.[7]

In addition to the above findings, which can do double duty under the objective standard of Rule 11, Fed.R.Civ.P., with respect to all papers filed after such facts became known to Maddox, and under 42 U.S.C. § 1988 for continuation of the lawsuit after such facts became known, it is also plain for the reasons set forth in Section IV of this opinion that there was no legal basis from the day the complaint was

7. In view of the affidavits submitted by both sides, it would be difficult for Maddox to urge that his subjective state of mind was not placed in issue simply because the defendants' papers did not refer to the court's inherent power or to 28 U.S.C. § 1927. "The only possible rebuttal to the court's conclusion would be a demonstration that the court overlooked controlling statute or case law or misread the record. A petition for rehearing would seem adequate to bring such errors to the court's attention." *Braley v. Campbell,* 832 F.2d 1504, 1514 (10th Cir. 1987).

filed for the Sixth Amendment claim brought in Burgos' name.

Defendants' counsel is directed to file and serve by August 12, 1988 documentary and specific proof of the costs and fees generated by the activities described above, as well as a proposal as to the appropriate nature and amount of sanctions to be imposed. Maddox may file and serve by September 9, 1988 any response he may deem appropriate, to which defendants' counsel may reply by September 23, 1988. Any party wishing oral argument should so indicate in the above submissions.

SO ORDERED.