UNITED STATES of America ex rel.,
Willie JENKINS, Petitioner,

v.

Kenneth DOBUCKI, Respondent.

No. 97 C 4706.

United States District Court,
N.D. Illinois,
Eastern Division.

July 16, 1998.

Willie Jenkins, Hillsboro, IL, pro se.

William Lloyd Browers, Illinois Atty. General's Office, Criminal Appeals Div., Chicago, IL, Stephen F. Potts, Domenica A. Osterberger, Atty. General's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Presently before us is Willie Jenkins' *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Jenkins contends that: 1) his waiver of the right to counsel at trial was not knowing and voluntary; 2) the trial court erred in failing to conduct a hearing to determine whether his use of epilepsy medications rendered him unfit to stand trial; and 3) his appellate counsel was ineffective in failing to argue that he was entitled to a fitness hearing. For the reasons set forth below, we deny the petition.

### I. Background

The charges against Jenkins stemmed from a violent argument he had with his girlfriend on July 16, 1988. The conflict started in the apartment of Jenkins' brother and grew increasingly heated until finally Jenkins threw his girlfriend over a railing outside the third floor apartment and onto the second floor landing below. He then stomped on her chest repeatedly and dragged her down a flight of stairs by the back of her blouse. Shortly thereafter, police apprehended Jenkins near the scene.

After a jury trial in the Circuit Court of Cook County, where he appeared *pro se* (with the assistance of standby counsel), Jenkins was convicted of attempted first degree

murder. Before sentencing, the trial court noted that petitioner had previously received psychiatric treatment, and ordered a psychiatric examination to determine his fitness for sentencing. After a psychiatrist declared Jenkins fit for sentencing, the court sentenced him to 50 years imprisonment. The conviction and sentence were affirmed on appeal, and the Illinois Supreme Court denied Jenkins' Petition for Leave to Appeal. Jenkins exhausted his post-conviction remedies without obtaining any relief, and then filed the instant petition.

## II. Procedural Default

■ Before a federal court will entertain a petition for a writ of habeas corpus, the petitioner must (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court. *See Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citing § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); and *Verdin v. O'Leary*, 972 F.2d 1467, 1472–73 (7th Cir.1992)). Even assuming *arguendo* that Jenkins fairly presented his claims to the Illinois courts (or could show cause and prejudice for his failure to do so), we find his claims to be without merit, as explained below.

## III. Discussion

### A. Waiver of the Right to Counsel

■ Jenkins' first argument is that his waiver of his right to counsel at trial was invalid because it was not knowing and voluntary.[1] A criminal defendant, of course, has the right to conduct his own defense. *See Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). Before a trial court lets a defendant exercise this right, however, it must ensure that the defendant's waiver of his right to counsel was knowing and voluntary. *See id.* at 835; *Johnson v. Zerbst*, 304 U.S. 458, 464–465, 58

S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *United States v. Moya–Gomez*, 860 F.2d 706, 731 (7th Cir.1988). A trial court's finding that a waiver has occurred is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Cain v. Peters,* 972 F.2d 748, 749–50 (7th Cir.1992); *Lewis v. Huch,* 964 F.2d 670, 674–75 (7th Cir.1992).

■ The Supreme Court has not articulated a precise test for determining if a defendant waived counsel knowingly and voluntarily. Rather, we must determine whether "the record as a whole demonstrates that the defendant knowingly and intelligently waived his right to counsel." *Moya–Gomez*, 860 F.2d at 733. There are several factors to consider during this inquiry. First, we must see if the trial court engaged in a meaningful discussion with the defendant to ascertain whether he understood the significance of his decision to waive counsel. *See Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323–24, 92 L.Ed. 309 (1948) (plurality opinion) (colloquy should appraise the defendant of the "nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof"); *Moya–Gomez*, 860 F.2d at 733 (trial court must "conduct a formal inquiry in which the defendant is informed fully of the risks [of] proceeding *pro se* and explicitly advised against self-representation"); *United States v. Mitchell*, 788 F.2d 1232, 1235–36 & n. 3 (7th Cir.1986). A court "need not give 'a hypothetical lecture on criminal law,'" *Mitchell*, 788 F.2d at 1235 (quoting *Arnold v. United States*, 414 F.2d 1056, 1058 (9th Cir.1969)), but "should question the defendant to demonstrate the difficulties he would encounter in acting as his own counsel." *Moya–Gomez*, 860 F.2d at 732. Second, we must consider whether other evidence in the record establishes that the

---

1. In his petition, Jenkins actually argued only that his waiver of the right to counsel was obtained in violation of Illinois Supreme Court Rule 401. Pet'r Answer Br. at 5. As we explained in a subsequent order, however, a claim that a state court violated a state procedural rule is not cognizable on federal habeas review. *See Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir.1994). Since Jenkins is proceeding *pro se*,

however, we construed his brief as alleging that the trial court deprived him of his constitutional right to counsel without obtaining a valid waiver, and we invited the parties to submit supplemental briefing on this theory. In addition to the fact that this theory is without merit, as explained in the text, it has almost certainly been procedurally defaulted since Jenkins never presented it to the Illinois courts.

defendant in fact understood the dangers and disadvantages of self-representation. *See id.* at 736. Third, we must inquire whether the defendant's background and experience indicate that he did or did not understand the significance of waiving counsel. *See id.*

■ Having examined the trial record with these factors in mind, we have no doubt that Jenkins' waiver of counsel was knowing and voluntary. First, the trial judge did conduct the kind of formal inquiry envisioned by *Von Moltke, Moya–Gomez,* and *Mitchell.* The judge engaged in a substantial conversation with Jenkins about his constitutional right to counsel and advised him against proceeding *pro se. See* Pet'r Answer Br. Ex. A at 4–12 (transcript excerpt). During this conversation the judge informed Jenkins that the charges against him were serious and that proceeding without counsel was risky. *See id.* at 7. (Jenkins made light of this line of inquiry, stating to the judge, "I am well familiar with the phrase, 'Only a fool has himself for a lawyer.'" *Id.* at 4.) The judge also inquired into Jenkins' educational background, and asked if he was familiar with the law and rules of evidence, to which Jenkins replied that he was. *See id.* at 9–11. The judge even advised Jenkins to think about his decision to represent himself over the weekend, an invitation he declined. *See id.* at 7. At the end of the discussion, the judge took note of the fact that Jenkins appeared to be in control of his mental faculties (a conclusion amply supported by Jenkins' coherent answers to the questions posed to him), and found that Jenkins' waiver of counsel was "knowing and intelligent." *Id.* at 12. This colloquy more than satisfies the constitutional minimum.

Furthermore, to the extent the rest of the trial record sheds any light on the question, it appears that Jenkins understood the dangers and disadvantages of self-representation. Most importantly, Jenkins had previ-

ously been convicted of two serious crimes, so he was no stranger to the criminal process. *See* Pet'r Answer Br. Ex. B. at 18. He had enough education-two years of college and a business degree-to understand the significance of legal representation. And at the very beginning of Jenkins' opening argument he explained to the jury that he had chosen to defend himself even though he was not trained in the law because he felt the public defender was biased against him. *See* Tr. at 192. We think the overall picture that emerges from the trial is that Jenkins understood the disadvantages of proceeding *pro se* when he made the decision to do so. Thus, we agree with the trial judge's conclusion that Jenkins' waiver of the right to counsel was knowing and voluntary, even aside from the presumption of correctness to which that conclusion is entitled.

### B. Due Process

■ Jenkins' second argument is that the trial court denied him due process by failing to hold a fitness hearing to determine his competence to stand trial.[2] Jenkins contends that he was under the influence of psychotropic drugs at the time of his trial,[3] and therefore was entitled to a fitness hearing. Even assuming *arguendo* that the trial court erred in failing to conduct a fitness hearing, this error is harmless unless Jenkins can present a colorable argument that he was unfit to stand trial. *See United States v. Franzen,* 686 F.2d 1238, 1245–46 (7th Cir. 1982). This he cannot do.

■ A defendant is competent to stand trial if he has "'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). If the defendant has such understanding, he will be deemed competent to stand trial regardless of mental defect. If a

---

2. As with his waiver argument, Jenkins did not present his fitness argument to us as a constitutional claim—he merely argued that he was entitled to a hearing under state law. Though we will construe his claim as a constitutional due process argument, this theory was never presented to the Illinois courts, and is thus defaulted.

3. The parties dispute the classification of the anti-convulsants Phenobarbitol and Dilantin—which Jenkins took for epilepsy—as psychotropic. *See* Pet'r Br. at 6–7; Resp. Br. at 15–16. Even if these drugs are psychotropic, however, Jenkins' claim cannot succeed, as explained *infra* in the text.

party challenges fitness for trial post-trial, evidence of his behavior and demeanor during the court proceedings is relevant to the competency determination. *See Eddmonds v. Peters,* 93 F.3d 1307, 1314 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1441, 137 L.Ed.2d 548 (1997). As with the waiver of the right to counsel, a trial court's finding that a defendant is fit to stand trial is a factual finding which we presume to be correct. *See Maggio v. Fulford,* 462 U.S. 111, 116–118, 103 S.Ct. 2261, 2263–65, 76 L.Ed.2d 794 (per curiam). *But cf. id.* at 118–119 (White, J., concurring) (arguing that fitness is a mixed question of law and fact).

We could hardly imagine a case having more evidence of the defendant's ability to understand the proceedings and to assist in his own defense than this one. Jenkins conducted his own defense—giving opening and closing statements, putting on witnesses, cross-examining the state's witnesses, filing motions in limine and post-trial—and the record clearly shows that he understood what was going on throughout these proceedings. Moreover, our earlier conclusion that Jenkins knowingly and intelligently waived his right to counsel implies the more general conclusion that he was fit to stand trial.

The *Eddmonds* case is particularly bad precedent for Jenkins. In *Eddmonds,* the court found that a habeas corpus petitioner had been fit to stand trial even though he was taking psychotropic drugs and several psychiatrists had declared him, early in the proceedings, unfit for trial. The court held that the defendant's conversations with the trial judge regarding his decision to waive a jury trial demonstrated his understanding of the relevant issues. Combined with the defendant's detailed recollection of events surrounding the crime, the judge found the defendant a "reasonably intelligent man actively defending his interests." *Id.* at 1318. The court concluded that the lack of fitness hearing did not prejudice the defendant's case. It noted further that:

The trial transcripts reveal a man with a good memory, a good understanding of the facts arrayed against him, and a firm grasp of his trial strategy.... Coupled with the numerous psychiatric and psychologi-cal examinations finding him fit in the months preceding the trial, this shows that whatever psychoses may have afflicted him, [the defendant] was fit to participate actively and meaningfully in the adversarial process, and in fact did so. That is all the Constitution requires. *Id.* at 1319.

Jenkins' case is even weaker than the defendant in *Eddmonds,* as no psychiatrist ever declared Jenkins unfit for trial. Indeed, the doctor the court enlisted to determine Jenkins' fitness for sentencing concluded that Jenkins "understands the nature of the charges, shows an adequate understanding of court proceedings, and shows the ability to cooperate with counsel in aggravation and mitigation matters." Pet'r Answer Br. Ex. C (letter from Dr. Matthew Markos). We conclude that Jenkins was fit to stand trial, and therefore any error committed by the trial court in failing to hold a fitness hearing was harmless.

### C. Ineffective Assistance of Counsel

Jenkins' last argument is that his appellate counsel was constitutionally ineffective in failing to raise his entitlement to a fitness hearing on direct appeal. To establish that he was deprived of effective assistance of counsel, Jenkins must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). With respect to the first prong—known as the "performance" prong—the Supreme Court has observed:

The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel has made demonstrable errors— the kind of testing envisioned by the Sixth Amendment has occurred.

*United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984). The second prong—known as the

"prejudice" prong—requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A defendant asserting a Sixth Amendment claim has "the heavy burden of affirmatively establishing that counsel's performance was constitutionally deficient." *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1133 (7th Cir.1990). We may not second-guess counsel's strategic decisions. *See United States v. Cooke,* 110 F.3d 1288, 1299 (7th Cir.1997).

Even if we assume that Jenkins was entitled to a hearing, "a fitness hearing is not an end in itself. . . . [T]he improper denial of a fitness hearing can be harmless under *Strickland.*" *Eddmonds,* 93 F.3d at 1316. We need not ask whether the court should have conducted a fitness hearing, but rather whether the defendant was fit to stand trial. "Only if there was a reasonable probability that [the defendant] was not fit, calling into question the integrity of the adversarial process, will 'confidence in the outcome' of the trial be deemed undermined for purposes of an ineffective assistance claim under *Strickland.*" *Id.* at 1317 (citation omitted). As set forth above, there is no probability that Jenkins was not fit, so suffered no prejudice from his attorney's failure to raise this argument on appeal.

## IV. Conclusion

For the reasons set forth above, we deny Jenkins' petition for writ of habeas corpus. It is so ordered.