David Leon WOODS, Petitioner,

v.

Rondale ANDERSON, Superintendent, Respondent.

No. IP99–0520–C–M/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 2, 2004.

916

Teresa D Harper, Attorney at Law, Bloomington.

William Van Der Pol Jr, Martinsville.

Thomas D Perkins, Deputy Attorney General, Indianapolis.

## ENTRY DISCUSSING PETITION FOR WRIT OF HABEAS CORPUS

McKINNEY, Chief Judge.

Petitioner David Leon Woods was convicted in an Indiana state court of the murder and robbery of Juan Placencia. For the murder, Woods was sentenced to death. He now seeks a writ of habeas corpus.

For the reasons explained in this Entry, Woods' petition must be **denied**.

### I.

Woods' convictions were affirmed on direct appeal in *Woods v. State*, 547 N.E.2d 772 (Ind.1989) (*Woods I* ). He was sentenced to death for the murder and to a separate 50–year sentence for the robbery. The sentence of death was affirmed in the direct appeal, though the separate 50–year robbery sentence was vacated as a multiple sentence in violation of Woods' federal and state double jeopardy rights. *Id.* at 795. A second opinion, issued on rehearing, affirmed the convictions and sentence of death. *See Woods v. State*, 557 N.E.2d 1325 (Ind.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991). The Indiana Supreme Court then affirmed the trial court's denial of post-conviction relief in *Woods v. State*, 701 N.E.2d 1208 (Ind.1998)(*Woods II*), *cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).

The evidence at trial favorable to the jury's verdict showed the following:

At approximately 4:00 a.m. on April 7, 1984, appellant David Woods, along with Greg Sloan and Pat Sweet, proceeded to the apartment of the victim, Juan Placencia, to steal a television. This occurred in Garrett, Indiana, a small town. Placencia was a seventy-seven-year-old man who had medical problems with a knee. Woods, nineteen years old at the

time, was armed with a knife and told Sloan and Sweet that he was going to scare Placencia with it.

Sweet stayed in the yard. Appellant Woods and Sloan approached the door of the apartment and rang the bell. Placencia answered the door, whereupon appellant Woods immediately jumped in and stabbed him several times with the knife. Placencia fell back into a chair, directed them to his money, and began to make noise, asking for help. Woods took the money from Placencia's wallet and then stabbed him again repeatedly. Placencia died from three wounds which pierced his heart.

Woods and Sloan carried out the television and hid it in a trash bin. Later they picked it up and sold it. They also washed their clothes and threw the knife and other items in a creek.

*Woods I,* 547 N.E.2d at 778.

## II.

### A.

In the exercise of its habeas jurisdiction, a federal court may grant relief only if the petitioner shows that he is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).

Under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, ("AEDPA"), "habeas relief may be granted if a state court's adjudication of a matter 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Dixon v. Snyder,* 266 F.3d 693, 699 (7th Cir.2001) (quoting 28 U.S.C. § 2254(d)(1)).

A state court decision is "contrary to" Supreme Court precedent [1] "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or [2] "if the state court confronts facts that are ma-

terially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court]." An "unreasonable application" of Supreme Court precedent occurs when "the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."

*Id.* at 700 (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (footnotes and additional citations omitted)). The Seventh Circuit has explained that the "unreasonable application" prong of § 2254(d)(2) "is a difficult standard to meet":

"unreasonable" means "something like lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir.2002). We have held that under this criterion, habeas relief should not be granted if the state court decision can be said to be one of several equally-plausible outcomes. *Boss v. Pierce,* 263 F.3d 734, 742 (7th Cir.2001).

*Jackson v. Frank,* 348 F.3d 658 (7th Cir. 2003).

Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.2000) (*citing* 28 U.S.C. § 2254(e)(1)). This is a "rigorous burden of proof." *Sanchez v. Gilmore,* 189 F.3d 619, 623 (7th Cir.1999). *See also Green v. White,* 232 F.3d 671, 672 n. 3 (9th Cir.2000) (although "the relationship between § 2254(d)(2) and § 2254(e)(1) is not entire-

ly clear ... the standard of review appears to be clear error under both statutory provisions.").

## B.

■ In addition to the substantive standard set out above, "habeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 14, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (O'Connor, J., dissenting) (internal citations omitted). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The purpose of the rules of procedural default is to "afford[ ] to the state courts an opportunity to correct a constitutional violation." *Duckworth v. Serrano,* 454 U.S. 1, 4, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981).

■ Procedural default occurs either: (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims would now find such claims procedurally barred, *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.,* at 729, 111 S.Ct. 2546.

■ Thus, "[a] state prisoner ... may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir.2000). If a prisoner commits procedural default with respect to his claim in habeas,

he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397(1986); additional internal citations omitted).

■■ "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488, 106 S.Ct. 2639. Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

## III.

### A.

On April 9, 1984, Woods was charged in DeKalb County with the murder and robbery of Juan Placencia in Garrett, Indiana. He appeared in court and an attorney entered an appearance on behalf of Woods that same day. The State of Indiana filed a *Request for Sentence of Death* on April 12, 1984. The aggravating circumstance alleged by the State in seeking the death penalty was that Woods had committed "an intentional murder in the commission of a robbery." This is an aggravating circumstance under Indiana law. IND. CODE § 35–50–2–9(b)(1).

Trial of the charges against Woods occurred in the Boone Superior Court. His trial by jury commenced in February 1985. Woods was convicted of murder and rob-

bery. At the penalty phase, the jury returned a recommendation of death. On March 28, 1985, Woods was sentenced to death.

### B.

Woods' claims are the following:

1. He was not afforded a fair trial and penalty phase because he was not competent;

2. He was denied the effective assistance of counsel when his attorneys failed to tender an instruction on the presumption of innocence to be read to the jury at the penalty phase and failed to present significant mitigating evidence;

3. He was denied the right to heightened reliability in death penalty sentencing determinations when the prosecuting attorney committed misconduct and used unfair tactics in violation of the Eighth Amendment;

4. He was denied his rights under the Eighth and Fourteenth Amendments when the trial court refused the defense's tendered penalty phase instructions;

5. He was denied his rights under the Fifth Amendment when the statements he made to the officers were not voluntary;

6. He was denied the effective assistance of counsel at trial and at the penalty phase. Specifically:

 a. His first lawyer, Charles Rhetts, had a conflict of interest that delayed the preparation of the defense and prejudiced Woods;

 b. Subsequent trial counsel were rendered ineffective when the trial court refused to grant a continuance sufficient to allow them to adequately prepare for trial;

 c. Trial counsel were ineffective when they failed to apprise themselves of the law with respect to competency; and

 d. Trial counsel were ineffective when they failed to object to the prosecution's and trial court's reference to the jury's role as a recommendation and when they failed to tell the jury or request that the trial court advise the jury that its recommendation was to be given great weight;

7. He was denied his rights under the Fifth, Sixth and Eighth Amendments when the trial court granted the state's motion to incorporate all evidence presented at trial into the penalty phase, instructed the jury that they could consider all evidence presented at trial into the penalty phase and when the prosecuting attorney argued non-capital statutory aggravating circumstances warranting death; and

8. He was denied his right to substantive due process when he was granted post-conviction counsel but not granted a mechanism for review of his conflicting theory of defense with counsel.

### IV.

### A.

 Woods contends that he was not competent and therefore, he was not afforded a fair trial and penalty phase of the trial.

Competency claims can raise issues of both substantive and procedural due process. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. *Walker v. Attor-*

*ney General for the State of Oklahoma,* 167 F.3d 1339, 1343 (10th Cir.1999) (internal citations omitted). A petitioner can make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Id.* at 1344. To succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial. *Walker,* 167 F.3d at 1347. *Hastings v. Yukins,* 194 F.Supp.2d 659, 670–71 (E.D.Mich.2002).

■ Although Woods' habeas petition contains language suggestive of both a procedural and a substantive deficiency in the competency determinations made by the trial court, no procedural deficiency has been identified; that is, the question of Woods' competence was suggested before the trial, the trial court appointed two doctors to evaluate and report on Woods' competence to stand trial, and each doctor filed a report that Woods was competent to stand trial. The trial court then concluded that reasonable grounds were absent to justify a competency hearing under IND. CODE § 35–36–3–1. Accordingly, a competency hearing was not held prior to trial. No additional procedural steps were required. As the Indiana Supreme Court explained, "[t]he evidence clearly justified the court in not holding a hearing, as it supported adequate competency." *Woods I* at 788.

After Woods' trial and prior to his final sentencing hearing, the court held a hearing to address the issue of whether Woods was competent to stand trial and found that indeed he was. The hearing record included previous testimony from profes-

sionals who had evaluated Woods and had testified at Woods' death sentence hearing in front of the jury and the observations of Woods' demeanor and trial counsel's written claim that Woods had no recollection of the significant events of the crime. The Indiana Supreme Court explained that, "[d]espite the claimed loss of memory, the record clearly provided a reasonable basis for the determination of competency." *Woods I* at 788.

■ Substantively, the Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *Pate v. Robinson,* 383 U.S. 375, 384–86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.' " *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (citations omitted). Our Constitution forbids the trial of a defendant who is unfit to assist in his own defense because our adversarial system of justice depends on vigorous defenses. *Eddmonds v. Peters,* 93 F.3d 1307, 1314 (7th Cir.1996), *cert. denied* 520 U.S. 1172, 117 S.Ct. 1441, 137 L.Ed.2d 548 (1997). The issue of a defendant's competency to stand trial centers on whether he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). As such, a mentally ill defendant may be found competent if he meets this standard. *See Eddmonds,* 93 F.3d at 1314 (citing *Medina v. Singletary,* 59 F.3d 1095, 1107 (11th Cir.1995) (stating "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand

trial")). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges." *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985); *Galowski v. Berge,* 78 F.3d 1176, 1182 (7th Cir.1996). As the Seventh Circuit opined in *Eddmonds:*

> There is no question that [the defendant] is a disturbed man, and has been so for some time. . . . But that doesn't necessarily mean he was unfit for trial. If it did then no one guilty of heinous crimes could be tried. Fitness for trial is a much narrower concept than moral or social wellness.

*Id.,* 93 F.3d at 1314.

The determination of whether Woods was competent to stand trial was essentially a fact determination. *Thompson v. Keohane,* 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (citing *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam)); *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1011 (7th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985); *United States ex rel. Jenkins v. Dobucki,* 12 F.Supp.2d 827, 831 (N.D.Ill.1998). In fact, the Supreme Court has stated that "a federal habeas court may not substitute its own judgment concerning the credibility of witnesses in a state proceeding to determine a defendant's competence to stand trial." *United States ex rel. Bilyew v. Franzen,* 842 F.2d 189, 192 (7th Cir.1988) (citing *Maggio* ).

Because the question of competency to stand trial is a question of fact, § 2254(d)(2) comes into play, and as to this, the AEDPA established a presumption of correctness with regard to "a determination of a factual issue made by a State

court" as provided in 28 U.S.C. § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Woods thus must show error in the state court's factual determination of competency "by clear and convincing evidence." He has not done so here. The ultimate issue, whether Woods was competent to stand trial, was for the trial court, not the experts, to decide. *See United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1245 (7th Cir.1982). Woods has not shown error in the trial court's determination of his competence to stand trial with respect to the process used, with respect to the facts found (which would require the showing of "clear and convincing evidence" as prescribed by § 2254(e)(1)), with respect to the standard applied, or with respect to the result reached. Woods is thus not entitled to relief on this ground.

### B.

Woods claims that he was denied the effective assistance of counsel during the proceedings in the Indiana courts. To determine whether the defendant received ineffective assistance of counsel, *Strickland v. Washington,* 466 U.S. 668, 691–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires analysis under a two pronged test. *First,* the defendant must offer proof "that counsel's representation fell below an objective standard of reasonableness." *Id.,* at 688, 104 S.Ct. 2052. *Second,* the defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.*, at 694, 104 S.Ct. 2052.

Woods asserts that he was denied the effective assistance of counsel when his attorneys failed to tender an instruction on the presumption of innocence to be read to the jury at the penalty phase and failed to present significant mitigating evidence.

■■■ The Indiana Supreme Court found these particular specifications of ineffective assistance of counsel "waived for lack of cogency and failure to cite to the record." *Woods II*, 701 N.E.2d at 1227. This is an independent and adequate state law ground for procedurally barring the claim. Woods can overcome the consequences of this procedural default only if he demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Dellinger v. Bowen*, 301 F.3d 758, 763 (7th Cir.2002). He has not done so, for at least the reason that he has not shown prejudice from the omissions.[1]

■■■ To establish actual prejudice, petitioner must show that the errors of which he complains "worked to his actual and substantial disadvantage, infecting his entire trial [or appeal] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■■■ By the time of the penalty phase of Woods' trial, he had been found guilty of both the murder of Juan Placencia and of

---

1. Woods' contention that the Indiana Supreme Court reached the merits of several ineffective assistance of counsel specifications because it found that they were barred by *res judicata* reflects a too-narrow understanding of that doctrine in this setting. Woods apparently believes that such a finding could only be made if the Indiana Supreme Court believed that it had reached the merits of the claims in an earlier proceeding. He states on page 14 of his reply to the respondent's return to order to show cause: "The Respondent's and the courts' reliance on *res judicata* necessarily means that the issue has been decided on the merits." In fact, however, the doctrine reaches somewhat beyond those specific circumstances:

> [The Indiana Supreme Court] has determined it to be inconsequential, for res judicata purposes, that a defendant's arguments on post-conviction appeal are new arguments about aspects of trial counsel's performance that were not considered on direct appeal ineffective assistance claims. *Moody v. State*, 749 N.E.2d 65, 68 (Ind.Ct. App.2001) (citing *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998)). Under such circumstances, a post-conviction court's consideration of an ineffective assistance of counsel claim would constitute review of a previously determined issue, and thus, is barred by res judicata. *Id.See also*

*Layton v. State*, 261 Ind. 567, 570, 307 N.E.2d 477, 479 (1974) (noting "the same issue, although differently assigned, was reviewed and determined .upon the defendant's direct appeal and is therefore res judicata .... This issue was decided against the defendant and is final, notwithstanding [the fact that the] cases which he relies upon for support had not yet been decided."); *Shoulders v. State*, 578 N.E.2d 693, 697 (Ind.Ct.App.1991). Similarly, the fact that Saunders now claims his sentence is inappropriate for a different reason than he argued on direct appeal does not negate the preclusive effect of the earlier adjudication for res judicata purposes. *Saunders v. State*, 794 N.E.2d 523, 527 (Ind. Ct.App.2003). Thus, the Indiana Supreme Court's finding of *res judicata* in *Woods II* amounts not to a declaration that Woods' ineffective assistance of counsel specifications have been decided on their merits, but only to the announcement that those specifications were within a previously determined issue, and hence not available for further consideration in the post-conviction proceeding. *See Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002) ("A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine 'curtails reconsideration of the federal issue on federal habeas.' ")(citing cases).

the robbery. The presumption of innocence which remained with Woods at each step of the guilt phase, until the jury determined that the State had proven each and every element of the charges beyond a reasonable doubt was no longer in effect. The Supreme Court has held that once a defendant is fairly convicted in the guilt phase of a criminal trial, any presumption of innocence evaporates as to the charged offenses of conviction. *Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993). Thus, tendering an instruction as to the presumption of innocence at the penalty phase would have been misplaced and unsuccessful, and Woods was not prejudiced by his attorneys' failure to tender such an instruction. *Hough v. Anderson*, 272 F.3d 878, 898 n. 8 (7th Cir.2001)("It is not deficient performance to fail to raise an argument with no real chance of success."). Woods' argument that the absence of an instruction of this nature, in the circumstances of his case, created a " 'genuine danger' " that the jury would return a recommendation of death (analogizing that verdict to a guilty verdict in the guilt phase of a trial) based on something other than the State's lawful evidence, proved beyond a reasonable doubt, relying on *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), rests on the view that the jury was not adequately instructed concerning the State's burden at the penalty phase—which it was—and that the jury would not follow that instruction in the absence of additional directions. This view is contrary to the Supreme Court's generally presumption that jurors follow their instructions. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Even if such an instruction had been given, this court is confident that the same recommendation would have resulted.

■ As a second portion of this claim, Woods argues that his attorneys mar-shaled insufficient mitigation evidence at the penalty phase. The Indiana Supreme Court described that evidence as showing that Woods' childhood was "turbulent" and that his mother was self-centered and inattentive. This was followed by an acknowledgment of findings by the trial court:

> Appellant was nineteen years of age. He lived as a child in an unstable environment. He lacked guidance, was mistreated, and did not have the social and learning skills to perform well in school. He was removed by court order from his home at fourteen and was kept in foster homes and institutions for four and a half years before rejoining his mother's household as an adult.

*Woods I*, at 787. Woods maintains, however, that the evidence supporting the foregoing findings was neither of the quality nor the quantity as that presented in the post-conviction action.

■ The Indiana Supreme Court found that the mitigation evidence presented at the post-conviction hearing was "cumulative of the evidence presented at trial," *Woods II*, 701 N.E.2d at 1226, and that even to the extent it was not of that character Woods "ha[d] not explained what any witness would have said, or any investigation would have uncovered, that might have led to a different sentence." *Id.* "Thus, even assuming the postconviction evidence on this point was not cumulative, prejudice has not been proved because Woods' surroundings were accepted as a mitigating factor at sentencing without the postconviction testimony." *Id.* To show prejudice in the capital sentencing context from the assertedly deficient performance of counsel, *Strickland* requires a petitioner to show "that a reasonable probability exists that, but for counsel's substandard performance, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Ashford v. Gil-*

*more,* 167 F.3d 1130, 1135 (7th Cir.1999); see also *Hall v. Washington,* 106 F.3d 742, 749 (7th Cir.1997). The mitigating evidence that Woods contends counsel was ineffective in failing to discover and present pales in comparison to the mitigating evidence which went undiscovered in *Williams v. Taylor,* 529 U.S. 362, 395–96, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), or in *Wiggins v. Smith,* —— U.S. ——, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). That information, pertaining to Woods, is not of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a different sentence would have resulted. The Indiana Supreme Court's assessment of the mitigation evidence offered at the post-conviction stage was not contrary to federal law as determined by the Supreme Court.[2] The Indiana Supreme Court's assessment of the mitigation evidence offered at the post-conviction stage was " 'at least minimally consistent with the facts and circumstances of the case,' " *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir.2002) (quoting *Schaff v. Snyder,* 190 F.3d 513, 522 (7th Cir.1999)), and hence was not an unreasonable application of the prejudice requirement of *Strickland.*

## C.

Petitioner argues that he was denied the right to heightened reliability in death penalty sentencing determinations when the prosecuting attorney committed misconduct and used unfair tactics. Two instances of misconduct are asserted here.

! "In final summation to the jury at both the guilt and sentencing phases, the trial prosecutor urged the jury to draw the inference from Steven Furnish's testimony that [Woods] intended to rob and kill Placencia as early as that evening." *Woods I,* 547 N.E.2d at 781. Woods points out that the prosecutor was fully aware that Furnish's statement to police of the conversation between Furnish and Woods, in which Woods had brandished a knife (the ultimate murder weapon), in which Woods had made reference to killing either Susie Dunn, Robert Dunn, Susie and Robert, or Susie and Jeana Hawn, and in which Furnish had warned Woods of the consequence of such an act, did not involve the actual victim, Juan Placencia.

! "In final summation at the guilt phase of the trial, the trial prosecutor called for the jury to engage in the fight against crime and for justice and to strike a blow against evil and for the sanctity of the home." *Woods I,* 547 N.E.2d at 772.

In evaluating a claim of prosecutorial misconduct as a violation of the petitioner's due process right to a fair trial, the inquiry

---

2. Even if the Indiana Supreme Court's citation to the fundamentally unfair or unreliable result language used in *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), can be thought to have referred to a decision "contrary to" controlling Supreme Court authority (consisting of the meaning of "prejudice" as stated in *Strickland* itself), such as was found to have been the case in *Winters v. Miller,* 274 F.3d 1161 (7th Cir. 2001), with respect to the decision of the Indiana Supreme Court, and in *Washington v. Smith,* 219 F.3d 620 (7th Cir.2000), with respect to review of an ineffective assistance of counsel claim by the Wisconsin Court of Appeals, Woods would not be entitled to relief

on this claim. Thus, even if the deference commanded by § 2254(d)(1) is jettisoned because of the state court's reference to an arguable application of the prejudice test applied in *Lockhart,* this court's *de novo* review of the claim would yield the same conclusion as that reached by the Indiana Supreme Court. It is clear that prejudice in Woods' case should have been determined under the *Strickland* standard: Did Woods show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[?]" *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. For the reasons explained in the text, the answer to that question is "No."

is whether the prosecutor's conduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

> In evaluating prosecutorial misconduct under governing Supreme Court law, it is not enough that the prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." As we pointed out in *Howard v. Gramley,* 225 F.3d 784, 793 (7th Cir.2000), *Darden* sets forth several factors to inform this inquiry: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." These factors, however, are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line. For that reason, we often have characterized the weight of the evidence as "the most important consideration."

*Hough v. Anderson,* 272 F.3d 878, 903 (7th Cir.2001) (footnote and some internal citations omitted).

The Indiana Supreme Court recognized these principles in evaluating the claim of prosecutorial misconduct, though it addressed the issue in terms of the "grave peril" standard drawn from *Hensley v. State,* 497 N.E.2d 1053, 1057 (Ind.1986), *Carman v. State,* 272 Ind. 76, 396 N.E.2d 344, 346 (1979), and *Maldonado v. State,* 265 Ind. 492, 355 N.E.2d 843, 848 (1976).

Woods has not shown that the Indiana "grave peril" standard is materially different from the federal standard. In determining whether "grave peril" resulted, the Indiana courts look to the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* The Indiana Supreme Court also recognized that "[u]nder the federal Constitution, a sentence of death must be vacated where the trial prosecutor engages in misconduct before a sentencing jury which is so unfair and improper as to undermine the reliability of the sentencing decision," and that "whenever irrelevant and highly inflammatory material is injected at a sentencing hearing, an arbitrariness violative of the Eighth Amendment may result." *Woods I,* 547 N.E.2d at 781 (citing cases). Woods has not shown that the Indiana Supreme Court reached a conclusion opposite to that reached by the United States Supreme Court on a question of law or that the Indiana Supreme Court decided Woods' case differently than a United States Supreme Court decision on a set of materially indistinguishable facts. There was no error under the "contrary to" prong of § 2254(d)(1).

■ With respect to the "unreasonable application" prong of § 2254(d)(1), the Indiana Supreme Court concluded that the prosecutor's reference to the conversation between Woods and Furnish as evidence of Woods' premeditation was nothing more than a comment on the evidence. *Woods I,* 547 N.E.2d at 781. This was not off the mark.

■ The Indiana Supreme Court did conclude that the second specified remark was improper.

> An argument of this sort, claiming that the jury owes it to the community to recommend the death penalty, amounts to misconduct. The danger of this type

932

of argument is that it can be misunderstood by the jury as calling for the jury to convict the accused regardless of his guilt. Although this argument did pose such a danger, it was not such as to place [Woods] in a position of grave peril. Given the strength of the prosecution's evidence and the general nature of the patriotic remarks, the degree of impropriety and the probable persuasive effect on the jury's decision was no more than minimal. The statements made by the trial prosecutor concerning the testimony of the witness Furnish and the duty of the jurors did not constitute cause for mistrial or undermine the reliability of the jury's death sentence recommendation contrary to the requirements of the Eighth Amendment.

*Woods I*, 547 N.E.2d at 772 (citations omitted). The Indiana Supreme Court's decision that the second specified remark did not place Woods in a position of grave peril or undermine the reliability of the jury's death sentence recommendation contrary to the requirements of the Eighth Amendment also did not amount to an "unreasonable application" of *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The Indiana Supreme Court considered the nature and seriousness of the prosecutor's comment, the strength of the State's case, and "the probable persuasive effect on the jury's decision .. [as] no more than minimal," its decision that the remark was not misconduct of the nature and severity which deprived him of a fair penalty phase was certainly "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997). Even this second instance of alleged misconduct by the prosecutor was not so improper as to have denied Woods a fair trial, *Bowling v. Parker*, 344 F.3d 487, 516–17 (6th Cir.2003), and Woods therefore, is not entitled to

relief under the "unreasonable application" prong of § 2254(d)(1).

**D.**

Woods claims that he is entitled to habeas relief based on the violation of his rights when the trial court refused his tendered penalty phase instructions.

■ The Indiana Supreme Court examined the allegation of error in relation to the tendered instructions and concluded that one was an incorrect statement of Indiana law, while the remaining were covered by instructions which were given. *Woods*, 547 N.E.2d at 784–85. To the extent this claim involves simple questions of state law, the claim is not cognizable in federal habeas. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

■ The Indiana Supreme Court expressed the factors to be considered in determining whether any error occurred in refusing to give the tendered instructions:

(1) whether the instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the instruction is covered by other instructions which are given.

*Woods I*, 547 N.E.2d at 784 (citing *Davis v. State*, 265 Ind. 476, 355 N.E.2d 836 (1976)). The Seventh Circuit has explained that the federal standard for reviewing the same question is whether the refusal to give the requested instruction "so infected the entire trial that the resulting conviction violate[d] due process." *Love v. Young*, 781 F.2d 1307, 1318 (7th Cir.1986) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)), *cert. denied*, 476 U.S. 1185, 106

S.Ct. 2923, 91 L.Ed.2d 551 (1986). The standard employed by the Indiana Supreme Court in Woods' direct appeal was not "contrary to" the federal standard.

"In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would-with a commonsense understanding of the instructions in light of all that has taken place at the trial." *Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). That is precisely the commonsense understanding which the Indiana Supreme Court brought to bear on the subject when it found that the substance of the tendered instructions—with the exception of the one tendered instruction which was a misstatement of Indiana law—was adequately covered by instructions which were given. *Woods I*, 547 N.E.2d at 785. The refusal to give the requested instructions thus did not violate Woods' due process right to a fair trial. *See United States ex rel. Swimley v. Nesbitt*, 608 F.2d 1130 (7th Cir.1979) (the failure to give a cautionary instruction on the testimony of accomplices or immunized witness did not violate the petitioner's due process right when jury was instructed in general terms on the evaluation of the credibility of witnesses). The Indiana Supreme Court's decision on this claim was at least minimally consistent with the facts and circumstances of the case, and was "one of several equally plausible outcomes." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997). Accordingly, Woods is not entitled to federal habeas relief based on his claim of the denial of tendered instructions at the penalty phase, even if that claim can be understood as implicating a federal interest.

**E.**

 Following his arrest, Woods was interrogated by police and after approximately nine (9) hours in police custody gave an incriminating statement. The trial court denied his motion to suppress that statement, which was then introduced as evidence. Woods argues in this action that the denial of his motion to suppress was error and that his confession should not have been admitted.

 In *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated that custodial interrogations are inherently coercive.

"*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). A defendant may waive effectuation of the rights articulated in *Miranda* "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. "When a *Miranda* waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was involuntary as a matter of law." *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir.1996) (citations omitted).

*Jackson v. Frank*, 348 F.3d 658, 662–63 (7th Cir.2003) (footnote omitted). A waiver is voluntary in the absence of coercion, and is knowing if made " 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *United States v. Krilich*, 159 F.3d 1020, 1025–26 (7th Cir.1998) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). When making this

assessment on habeas review, " '[t]he state court's historical findings as to the petitioner's knowledge, understanding, and determination ... are ... entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) ....' " *Id.* at n. 5 (quoting *Henderson,* 97 F.3d at 946). *See also Everett v. Barnett,* 162 F.3d 498, 500 (7th Cir.1998) (explaining that whether habeas petitioner's *Miranda* waiver was voluntary is a question of law to which the § 2254(d) standard of review applies, although the underlying historical facts are afforded the presumption of correctness under § 2254(e)(1)).

The Indiana Supreme Court acknowledged the requirements of *Miranda* and the necessity for a valid waiver to exist before statements given during a custodial interrogation are admissible. *Woods I,* 547 N.E.2d at 787 ("A statement by an accused is not admissible against him if it is not voluntarily given." A statement made under circumstances requiring the giving of *Miranda* warnings is not admissible unless such warnings are given and a knowing and intelligent waiver of the rights involved is made. In determining whether a statement was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was "induced by any violence, threats, promises, or other improper influence." The same test determines whether a waiver of the *Miranda* rights has occurred.)(quoting *Ortiz v. State,* 265 Ind. 549, 356 N.E.2d 1188, 1191 (1976)). The Indiana Supreme Court in *Woods I* noted that "signing of a waiver form does not conclusively show a valid waiver," *id.,* and proceeded to examine the circumstances of the interrogation and under which the incriminating statement was made. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably ... sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.").

The Indiana Supreme Court then set forth the facts pertinent to this claim. It first noted that Woods had been taken to the Garrett police station at about 10:00 a.m. on the day of his arrest, that at the Garrett police station he had waived his *Miranda* rights, had been interrogated at noon and again at 4:45 p.m., had persisted in maintaining his innocence and had agreed to take a polygraph test. *Woods I,* 547 N.E.2d at 787. At 7:45 p.m., Detective Stump and Chief Custer took Woods from the Garrett Police Department to the Indiana State Police Post in Fort Wayne. The state court opinion continued:

> Upon arriving at the post, [Woods] was turned over to the polygraph operator, was given his *Miranda* rights, and signed a written waiver at 9:11 p.m. He was tired at the time and said that he had slept eight hours Thursday night and that had been his last period of sleep. During some questioning in the polygraph room with the operator, preliminary to the test, [Woods] broke down and gave a full confession. This confession was recorded, but was not introduced into evidence. [Woods] was then turned back to Stump and Custer, who took him to an interview room, gave him *Miranda* rights again, which he waived in writing, and took a complete confession from him which was recorded. This recording of the confession was played to the jury.

*Id.* The record fairly supports this account, one which is entirely devoid of indications of coercive police conduct or of circumstances suggesting that Woods' waiver of his *Miranda* rights was involuntary in any

fashion. *Moran v. Burbine,* 475 U.S. 412, 422–23, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."). The Indiana Supreme Court's review of these circumstances and its conclusion that Woods' confession was admissible (because his waiver of his *Miranda* rights had been voluntarily made) was neither contrary to clearly established Federal law as determined by the Supreme Court of the United States, nor did it result in a decision involving an unreasonable application of such law. Accordingly, Woods is not entitled to federal habeas relief in this case based on his contention that his incriminating statement given to Indiana State Police in the course of his interrogation on the evening of April 7, 1984, should have been suppressed. *Ward v. Sternes,* 334 F.3d 696, 703 (7th Cir.2003) ("Our task is to uphold those outcomes which comport with recognized conventions of legal reasoning and set aside those which do not."); *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir.2002) ("AEDPA requires that [the state-court decision] be 'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion.").

### F.

■ Woods contends that he was denied the effective assistance of counsel at trial and at the penalty phase. Two of these contentions are related and rest on the asserted conflict of interest in his representation, for a period of time, by attorney Charles Rhetts. Woods contends that this conflict of interest delayed the preparation of Woods' defense and that his subsequent attorneys were rendered ineffec-

tive because the trial court refused to grant a continuance sufficient to allow them to adequately prepare for trial.

The Indiana Supreme Court explained the basis for the conflict of interest concern:

> Rhetts had represented Woods' mother in a CHINS (child in need of services) proceeding related to three of her other children. The result of the proceeding was that she was allowed to keep custody of the children but under considerable supervision by the welfare department. The mother had also consulted with Rhetts prior to the murder about a possible tort lawsuit arising out of an automobile accident (the suit was never filed). Because the CHINS proceeding presumably implicated the mother's fitness as a parent—a possible issue in the mitigation stage if Woods was found guilty—Rhetts' position was certainly a "potential" conflict.

*Woods II,* 701 N.E.2d at 1223 n. 25.

With this information in hand, the Indiana Supreme Court recognized the federal right implicated by Rhetts' representation of Woods and the time and circumstances under which Rhetts withdrew as Woods' attorney.

> The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984) (discussing *Cuyler*). Once the two prongs of *Cuyler* are met—actual conflict and adverse impact—prejudice is presumed. *Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict. *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir.1993) (adopting test followed by First and Third Circuits). *See also Cates v. Superintendent, Indiana Youth Center,* 981 F.2d 949, 955 (7th Cir.1992) ("The premise of a defendant's claim that he was denied conflict-free assistance ... must be that his lawyer would have done something differently if there was no conflict.").

*Woods II*, 701 N.E.2d at 1223. The foregoing correctly identifies controlling Supreme Court precedent on the subject of Rhetts' asserted conflict of interest.[3] The decision in Woods' direct appeal was not contrary to that precedent.

 This leaves for resolution whether the decision in *Woods I* was an unreasonable application of Supreme Court precedent. It was not. This court agrees fully with the Indiana Supreme Court's consideration of the effect of Rhetts' representation and the circumstances under which he withdrew as Woods' attorney:

> [E]ven assuming an actual conflict, Woods has not established an adverse

effect on his counsel's performance. First, he has not explained what the State could have learned at the meeting in which Rhetts asked to withdraw that so upset the possibility of a fair trial. Rhetts disclosed no details of the prior representation. Second, contrary to Woods' contention, Rhetts did not sit idle for the six months that he was on the case. Although he had not prepared for a possible penalty phase, he investigated Woods' sanity and competency to stand trial, filed a standard discovery request, and secured a change of venue due to adverse pretrial publicity arising out of the trial of co-defendant Greg Sloan. While not perfect representation in a capital case, at the pretrial stages this is not the stuff of adversely affected performance.

Third, and not surprisingly, Woods fails to direct our attention to evidence supporting his assertion that the conflict tainted the rest of the proceedings. There is no claim that the new lawyers had a conflict and Woods has not explained how Wharry and Johnston would have handled the case differently if they had been told of or discovered Rhetts' conflict. Any information Rhetts possessed about the mother was presumably privileged. Even if Rhetts' prior representation of the mother precluded him from fully probing her possible involvement in the crime, as Woods contends, Wharry and Johnston deposed her on that subject and had adequate opportunity to investigate that issue. More generally, the trial court granted the new lawyers' request for a continu-

---

**3.** The Supreme Court has never extended the *Cuyler* standard to cases involving successive, rather than multiple, representation. *See Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1245–46, 152 L.Ed.2d 291 (2002). There is, therefore, no "clearly established federal law, as determined by the Supreme

Court of the United States" mandating reversal of a conviction on a mere showing of a conflict of interest involving successive representation that adversely affected the attorney's representation of his client. See 28 U.S.C. § 2254(d)(1).

ance to give them more time to prepare, and this Court held on direct appeal that the failure to grant additional continuances was not error: "There is no basis in the record upon which to conclude that additional time for preparation and consultation would have better equipped defense counsel to represent their client." *Woods*, 547 N.E.2d at 788. Thus we cannot accept that the conflict structurally infected the rest of the proceedings.

*Woods II*, 701 N.E.2d at 1223–24 (citation omitted). This assessment, and the decision it produced, were well *within* the boundaries of permissible differences of opinion, *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir.2002), and were fully—far more than "minimally"—consistent with facts and circumstances of the case, *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir.2002). Accordingly, Woods is not entitled to relief in this action based on the "unreasonable application" prong of § 2254(d)(1) as to his claim that he was denied the effective assistance of counsel because of Mr. Rhetts' alleged conflict of interest.[4]

Woods' remaining specifications of ineffective assistance of counsel are that (1) trial counsel were ineffective when they failed to apprise themselves of the law with respect to competency, and (2) trial counsel were ineffective when they failed to object to the prosecution's and trial

court's reference to the jury's role as one of issuing a recommendation and when they failed to tell the jury or request that the trial court advise the jury that its recommendation was to be given great weight.

It has already been noted in Part IV.B. of this Entry that, under *Strickland*, a defendant alleging ineffective assistance must demonstrate both that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by this deficient representation. 466 U.S. at 687, 104 S.Ct. 2052. Prejudice requires a showing that absent the attorney's deficient performance there is a reasonable likelihood that the outcome of the proceedings would have been different. *Id.* at 694, 104 S.Ct. 2052.

▆▆▆▆ The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. For a petitioner to establish that his "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he

---

4. Recently, the Supreme Court modified the standard for ineffective assistance of counsel based on a conflict of interest. *See Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). In order to prevail under the modified standard, Woods must establish that an actual conflict of interest adversely effected his attorney's performance. *Id.* at 1245. An actual conflict exists when an attorney actively represents incompatible interests; it is more than a "mere theoretical division of loyalties." *Id.* at 1243. This in fact is the inquiry which the Indiana Supreme Court undertook, and in doing so it's decision nei-

ther constituted an objectively unreasonable application of Supreme Court precedent nor rested on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. It is apparent that the Indiana Supreme Court "t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir.2000). The issuance of a writ of habeas corpus under these circumstances is thus not warranted. *Murrell v. Frank*, 332 F.3d 1102 (7th Cir.2003).

must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.* at 687, 104 S.Ct. 2052. The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Holman v. Gilmore,* 126 F.3d 876, 881–82 (7th Cir.1997). The prejudice prong of the *Strickland* test requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052; *see also Bell v. Cone,* 535 U.S. 685, 697–98, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. A petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance. *Berkey v. United States,* 318 F.3d 768, 773 (7th Cir.2003).

█ Woods' claim relating to competence has already been addressed on its merits in Part IV.A. of this Entry. He failed to establish through that claim that there was error in a finding that he was competent to stand trial. His related claim at this point that his attorneys were ineffective for failing to apprise themselves of the law with respect to competency, cannot support relief because he suffered no prejudice based on whatever information his attorneys did or did not have relative to a defendant's competency.

█ Woods' final specification of ineffective assistance of counsel is that his attorneys failed to object to the prosecution's and trial court's reference to the jury's role in making a recommendation, and that his attorneys failed to tell the jury or request that the trial court advise the jury that its recommendation was to be given great weight.

█ In *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the Supreme Court vacated a defendant's death sentence when it found that the jury responsible for imposing the sentence was misled into believing that the responsibility for determining the appropriateness of the death sentence rested with the appellate court which later reviews cases, and not with the jury. *Id.* at 323, 105 S.Ct. 2633. A *Caldwell* violation occurs where the jury is affirmatively misled regarding its role in the sentencing process so as to diminish its sense of responsibility. *Romano v. Oklahoma,* 512 U.S. 1, 8–9, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). There was no *Caldwell* violation in Woods' case. As the Indiana Supreme Court noted,

> Informing the jury that its capital sentencing verdict is a "recommendation" does not diminish the jury's role in the process so as to violate the Eighth Amendment. Moreover, counsel's comments at the penalty phase were made in the context of emphasizing that the jury's decision was of paramount importance. This is completely consistent with the jury's role in our death penalty scheme.

*Woods II,* 701 N.E.2d at 1226 n. 27 (Internal citation omitted). A petitioner can only establish a Caldwell violation if he shows that "the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams,* 489 U.S. 401, 407, 109 S.Ct. 1211, 103 L.Ed.2d

435 (1989); *see also Fleenor v. Anderson,* 171 F.3d 1096, 1099 (7th Cir.1999). At the time of Woods' trial, under the law of Indiana the jury made a recommendation on whether a defendant should receive the death penalty, but the trial court ultimately imposes the sentence. IND. CODE § 35–50–2–9. The constitutionality of this scheme was reviewed and upheld in *Schiro v. Clark,* 963 F.2d 962, 969 (7th Cir.1992)("Regardless of its rationale, a state may constitutionally establish pure judicial sentencing in capital cases or it may permit judicial sentencing upon a nonbinding, advisory recommendation from a jury, as Indiana has chosen to do."). Because there was no misinformation communicated to the jury concerning its role in the statutory scheme, an objection would not have been sustained. Because an objection to the term "recommendation" would not have been sustained, it was not deficient performance on the part of Woods' attorneys to fail to make such an objection.

The Indiana Supreme Court's application of *Cuyler* and *Strickland* to the specifications of conflict of interest by counsel and to the asserted ineffective assistance of counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### G.

Woods claims that the trial court improperly incorporated evidence from the guilt phase of his trial into the penalty phase. Indiana's death sentencing statute provides, in pertinent part:

> If the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing .... The jury or the court may consider all the evidence introduced at the trial stage of the proceedings, together with

new evidence presented at the sentencing.

IND. CODE § 35–50–2–9(d) (1993).

The State did not present additional evidence at the penalty phase of the trial. Rather, it incorporated the evidence presented during the guilt phase. Woods argues that the incorporation violated "the due process clause of the [F]ifth [A]mendment and the notice and jury trial guarantees of the [S]ixth [A]mendment and the [E]ighth [A]mendment."

 The respondent argues that this claim is barred by procedural default for two reasons.

! The first of the respondent's arguments as to procedural default is that Woods failed to fairly present the federal basis of his current claim to the Indiana Supreme Court. This court does not agree. *Ellsworth v. Levenhagen,* 248 F.3d 634, 639 (7th Cir.2001) ("The bottom line is that the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis.") (quotations omitted).

! The respondent's second argument is that the Indiana Supreme Court resolved this claim on the basis of an independent and adequate state law ground. Although this suggests a basis for procedural default, it does not measure up here. The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims *because the prisoner had failed to meet a state procedural requirement.*" *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis added). The Indiana Supreme Court in this case rejected the

incorporation of evidence claim on its merits, not because of Woods' failure to comply with a procedural requirement. The respondent's second argument pertaining to the procedural posture of the incorporation of evidence claim is unpersuasive.

Accordingly, the claim has been properly preserved for federal habeas review. Even if the court concluded otherwise, however, the court would consider the merits of the claim. *Todd v. Schomig,* 283 F.3d 842, 849 (7th Cir.2002) (citing 28 U.S.C. § 2254(b)(2)).

■ Woods has not cited any Supreme Court holding which precludes or even criticizes the practice of incorporating guilt-phase evidence into the penalty phase. Thus, the "contrary to" prong of § 2254(d)(1) is not implicated here.

■ The Indiana Supreme Court discussed the incorporation claim as follows:

[Woods] next contends that it was error for the trial court to order the incorporation of all of the trial evidence from the guilt phase trial into the penalty phase trial over his objection and to instruct the jury that it could consider such evidence in making its sentencing recommendation. [Woods] argues that there is much in this body of evidence upon which the jury might seize and use to support its own finding of an uncharged or illegal aggravating circumstance and add the weight of that to the aggravator side of the scale when determining the sentence.

The use of all of the evidence introduced at the trial stage by the jury at the jury sentencing hearing is expressly authorized by statute. I.C. 35–50–2–9(d). The process was sanctioned in *Smith v. State* (1985), Ind., 475 N.E.2d 1139. Furthermore, the jury does not receive this trial evidence to be used in its discretion, but is instructed by the court on the use to which it may proper-

ly be put at the penalty stage trial. In the penalty phase instructions, only one aggravating circumstance was stated and defined, namely the one alleged by the State, and the jury was expressly restricted to consideration of that one. Accordingly, the incorporation of all of the trial evidence into the penalty phase trial before the jury did not create the danger of arbitrariness or capriciousness posed in this argument.

*Woods I,* 547 N.E.2d at 794.

Woods argues that the incorporation of the guilt phase evidence placed before the jury an array of evidence, particularly information about the victim, which could have played a part in the jury's recommendation. This argument was recognized and rejected by the Indiana Supreme Court as noted above.

■ Indiana is a "weighing state," meaning that it is a state in which aggravating factors play a special role in both stages of the death penalty selection process. In a weighing state, "after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence." *Stringer v. Black,* 503 U.S. 222, 229, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). First, aggravating factors in weighing states are used to determine if a defendant is eligible for the death penalty; unless at least one statutory aggravating factor is found, the judge or jury may not impose the death penalty. Second, in weighing states aggravating factors also play a critical role in the selection process. Only statutory aggravating factors are weighed against mitigating factors to determine if the death sentence is appropriate. *Hough v. Anderson,* 272 F.3d at 905.

The jury here was adequately and properly instructed concerning the allegation of

a statutory aggravating factor. The Indiana Supreme Court's finding that the jury was restricted to consideration of the one aggravating circumstance which the State had alleged, was not an unreasonable application of clearly established federal law.

■ Woods also challenges what he describes as the victim impact evidence presented and argued to the jury by the prosecution at the penalty phase. *See Woods v. State*, 557 N.E.2d at 1326 ("During the summation at the conclusion of the sentencing hearing before the jury, for the purpose of persuading the jury to recommend the sentence of death to the judge, the trial prosecutor made express mention of the physical frailty of the victim and the victim's family's grief, and also stated that appellant Woods had deprived the victim's family of the victim's company, that Woods was an executioner who deserved no more than what he gave his victim, and that the victim, before being killed by Woods, had not been given all the due process rights and benefits of a jury which appellant Woods had received.").

■ The use of victim impact evidence does not violate the Eighth Amendment. *See Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).[5] "The *Payne* Court recognized that only where such evidence or argument is unfairly prejudicial may a court prevent its use through the Due Process Clause of the Fourteenth Amendment." *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998). For the reasons explained by the Indiana Supreme Court, no misuse of that information occurred in

Woods' case, because the portion of the prosecutor's argument in which the victim's life and family were mentioned "did not inflame the jury's passions more than did the facts of the crime," *Payne*, 501 U.S. at 832, 111 S.Ct. 2597 (concurring opinion of Justice O'Connor), and was appropriate in light of the evidence:

> The evidence was such that the jury could reasonably have inferred that [Woods] was well acquainted with the victim and knew of the victim's physical impairment and the extent and closeness of the victim's family. [Woods'] mother had worked for the victim, and he had been fond of her. They lived close together in a small town. [Woods] knew the victim's circumstances, his work, and his personal characteristics. Indeed, the evidence permits the inference that when appellant went to the victim's apartment to carry out the plan to rob, he knew that if he knocked on the door, identified himself, and asked to use the phone, the victim would respond positively by opening the door. [Woods] knew that if he did not kill Placencia, Placencia would identify him as an assailant. It cannot be concluded therefore that the summation of the prosecutor was not based upon matters not relevant to circumstances of [Woods'] crime or his personal characteristics.

*Woods*, 557 N.E.2d at 1326.

In showing alertness to *Booth and Gathers*, which had not yet been overruled when Woods' direct appeal was decided, in issuing its decision in the petition for rehearing, and by assessing whether the challenged evidence was such as denied Woods a fair .trial, the Indiana Supreme

---

5. In *Payne*, the Supreme Court overruled its prior decisions in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), concerning the admissibility of victim impact evidence in a death penalty proceeding. Woods has withdrawn his claim under *Booth* and *Gathers*, but purports to continue to challenge the introduction and use of victim impact evidence.

Court did not reach a decision "contrary to, or [which] involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Additionally, the Indiana Supreme Court's careful attention to the nature and use of the guilt-phase evidence produced a decision fully-and hence axiomatically "minimally"-consistent with the facts and circumstances of the case.

Accordingly, Woods' claim that the trial court improperly incorporated evidence from the guilt phase of his trial to the penalty phase does not warrant relief.

### H.

Woods was represented by the office of the Indiana Public Defender in his direct appeal and in the petition for rehearing filed with the Indiana Supreme Court. Because of the obvious potential for a conflict of interest, "special state public defenders" were appointed to represent Woods in his action for post-conviction relief. The first such attorneys were Linda Waggoner and John Nimmo, who filed Woods' petition for post-conviction relief on May 6, 1994. Waggoner was replaced when she took employment, which precluded her continued representation of Woods. On January 9, 1995, the Indiana Public Defender filed a motion to substitute David Stebbins and Joe Keith Lewis to represent Woods. That motion was granted, and in the following months (1) the Indiana Supreme Court issued a series of orders compelling the post-conviction action to proceed without unnecessary delay, (2) Woods' attorneys sought a continuance of the post-conviction hearing, and (3) Woods himself filed a motion for change of counsel, citing an irreconcilable breakdown between himself and his appointed attorneys in how the post-conviction action should proceed. Woods' motion for change of counsel was followed on August 28, 1994, when both appointed attorneys filed a Motion to Withdraw. The trial court declined to permit the attorneys to withdraw.

An amended post-conviction petition was filed on August 30, 1995. The hearing on that petition was conducted in January 1996. As already indicated, the trial court denied post-conviction relief, and this denial was affirmed on appeal in *Woods II.*

■ Woods argues in his habeas petition that the trial court erred in not permitting his attorneys to withdraw. He concedes that this claim was never presented to the Indiana Supreme Court, but argues that the failure to have done so does not preclude consideration of the claim in this proceeding because, "due to the nature of the claim, presentation of the claim would have been impossible and/or futile."

■ A petitioner seeking federal habeas relief must establish that he fully and fairly presented his federal claims to the state court. *Chambers v. McCaughtry,* 264 F.3d 732, 737 (7th Cir.2001). So, a petitioner must give the state court a meaningful opportunity to consider the substance of the claims later presented in federal court. *Id.* Stated otherwise, "[a] state prisoner ... may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir.2000). Consequently, if a petitioner neglects to properly present a claim to the state's highest court, the claim is procedurally defaulted and barred from district court consideration. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (7th Cir.1999); *Moffat v. Broyles,* 288 F.3d 978, 982 (7th Cir.2002); *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir.2001).

Woods has not persuasively shown that an argument that the trial court committed error in denying the August 1995 motions to change counsel and for counsel to withdraw could not have been presented in *Woods II*. The asserted error related to rulings which were made by the trial court, rulings which were reflected in the court's minutes, rulings of which the parties were given notice when entered, rulings which (as presented in the habeas petition) rest on the force and logic of the Indiana Supreme Court's dictates that competent counsel be available to represent capital defendants in post-conviction proceedings, and rulings which Woods contends are fully supported by the record now and the record available to the Indiana Supreme Court. Woods' contention that the Indiana Supreme Court had already tipped its hand in the matter by administratively working with the trial court to ensure that the post-conviction proceedings would proceed at an appropriate pace does not support the inference that, when faced with an appeal from the denial of post-conviction relief, the Indiana Supreme Court would be unable or unwilling to address whether the asserted breakdown between the attorneys, their investigator, and Woods during the Summer of 1995 affected the representation to which Woods was entitled under Indiana law. The further suggestion that Woods' attorneys on appeal in *Woods II* were unable to present this issue is unavailing, for the simple reason that counsel had presented the claim to the trial court in August 1995. The premise of Woods' argument as to why exhaustion of this claim in the Indiana state courts is unnecessary is that there is a class of error which an Indiana trial court could commit—error which at least in this instance is said to involve the federal guarantee of due process as well as the proper implementation of State law—which is outside the scope of claims the Indiana Supreme Court could review on appeal. This prem-

ise is contrary to the explicit and established law of Indiana. Indeed, the Indiana Constitution provides: "The Supreme Court shall have no original jurisdiction except in ... supervision of the exercise of jurisdiction by the other courts of the State ...." Ind. Const. art. VII, § 4. The Indiana Supreme Court has explained, however, that "[i]f the accused's constitutional rights have been clearly violated as shown by the record, the court will not be bound by procedural irregularities." *Snow v. State*, 245 Ind. 423, 199 N.E.2d 469, 471 (1964) (citing *Adams v. State*, 230 Ind. 53, 101 N.E.2d 424 (1951)). Woods' view that including this claim in the appeal from the denial of post-conviction relief would have been "too little, too late," rests on the implausible view that the Indiana Supreme Court could not find a meaningful way to rectify the problem.

On the basis of the foregoing, therefore, Woods committed procedural default by not "fairly presenting" his claim of error in the denial of his request for different counsel in the post-conviction proceeding. He has not viewed the relevant sequence of events as a procedural default, and thus has not attempted to overcome its consequences. In having committed procedural default with respect to this claim and in not having shown the presence of circumstances permitting the court to reach the merits, Woods' claim of error associated with the trial court's denial of the request that different counsel be appointed to represent him after a request for that action was made and after the trial court was apprised of the breakdown among Woods, his attorneys, and the investigator working for the attorneys does not warrant relief in this case.

 Even if Woods' argument regarding the denial of his request for a further change of post-conviction counsel need not have been presented to the Indiana Su-

preme Court in *Woods II* in order to preserve the claim for habeas review, the argument would fail for essentially the same reasons as this court has explained in finding that a meaningful state court remedy for that claim existed. That is, the Indiana Supreme Court has not failed to provide a meaningful mechanism for the review of concerns such as Woods presented to the trial court in his request and that of his attorneys for a change of counsel. The Indiana Supreme Court's commitment to adequate representation to capital defendants is manifest through Rule 24 of the *Indiana Rules of Criminal Procedure.* Rule 24 would be sapped of a portion of its effectiveness if the representation of capital defendants in post-conviction proceedings is unsupervised and permitted to become ineffectual due to difficulties such as those experienced by Woods and his attorneys in this case or due to other circumstances. The record here points only to the Indiana Supreme Court's staying engaged in this process through even the administrative management of the post-conviction action, and this constitutes precisely the type of involvement which Woods claims was unavailable and detrimental to his representation in the post-conviction action.

The court thus accepts for the purpose of this decision Woods' argument that "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Evitts v. Lucey,* 469 U.S. 387, 401, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), but finds no basis for concluding that either the trial court's ruling denying the motion to withdraw filed by counsel for

Woods in August 1995 or the existence, manner, or type of review afforded on this subject by the Indiana Supreme Court denied Woods representation in the post-conviction action in a manner violative of due process.

### V.

"It can never be less than the most painful of our duties to pass on capital cases ...." *Eddings v. Oklahoma,* 455 U.S. 104, 127, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)(Burger, C.J., dissenting).

■ Here, Woods' prosecution, trial, conviction, and sentencing have received exhaustive review, both in this action for habeas corpus relief and in the Indiana state courts. Woods' conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir.2002) (citing *Parke v. Raley,* 506 U.S. 20, 29–30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)); *Milone v. Camp,* 22 F.3d 693, 698–99 (7th Cir.1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[6] This court has carefully reviewed the state records in light of Woods' claims and has given such consideration to those claims as the scope of its review in a habeas corpus proceeding permits. As to the claims which were properly preserved, they are uniformly without merit because the resolution of them by the Indiana courts was neither "contrary to clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), nor did it result in a decision "involv[ing] an unreasonable application of" such law. *Id.* "A defendant whose position depends on

---

**6.** Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitu-

tional rights." *Parke v. Raley,* 506 U.S. at 29, 113 S.Ct. 517 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir.1997). No such established rules entitle Woods to relief in this case. Woods' petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**